**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **DENTONS US LLP,**<br>**(f/k/a SNR Denton US LLP),**<br>**a Delaware limited liability partnership,**<br>**1301 K Street, N.W., Suite 600, East Tower,**<br>**Washington, D.C. 20005**<br><br>***Plaintiff*,**<br><br>***v*.**<br><br>**THE REPUBLIC OF GUINEA,**<br>**a foreign state,**<br><br>**and**<br><br>**THE MINISTRY OF MINES AND GEOLOGY**<br>**The Republic of Guinea,**<br>**BP 295**<br>**Conakry, Republic of Guinea**<br><br>***Defendants*.** | Case No. 1:14-cv-1312 |

## COMPLAINT

1. Plaintiff Dentons US LLP (f/k/a SNR Denton US LLP) (herein, "Dentons") as and for the Complaint against defendants the Republic of Guinea and its Ministry of Mines and Geology (together, the "Defendants") alleges as follows.

## NATURE OF THE ACTION

2. This action arises from Defendants' refusal to pay $10,214,458.48 in legal fees and costs that Defendants have repeatedly acknowledged they owe Dentons. The parties entered into a written contract, reflected in consecutive documentation executed in August 2012 and December 2012 (together, the "Retainer Agreement"), for the provision by Dentons of professional services and, in exchange, for Defendants to pay Dentons its legal fees and costs. Dentons seeks to recover the value of those legal fees and costs.

3. Defendants contracted with Dentons in connection with the development of a large-scale mining and infrastructure project in southeastern Guinea ("the Simandou Project" or "the Project") having a cost publicly estimated at $20 billion. In support of the Project, Dentons has rendered valuable professional services to Defendants, at Defendants' direction, for Defendants' benefit, and with Defendants' knowledge and approval.

4. Dentons performed professional services on behalf of Defendants at standard hourly rates, as agreed to by the parties, and upon Defendants' instruction and with their approval, recruited a team of specialist subcontractors to provide the multidisciplinary strategy and advice required by the Project's complexity, size and economic value. Pursuant to the Retainer Agreement, Dentons periodically invoiced Defendants for its services and those of its subcontractors, and the invoices were due upon receipt.

5. Defendants repeatedly requested that Dentons increase the scope of its deliverables, and Defendants often complimented Dentons, the quality and timeliness of Dentons' work product, and the team's dedication and commitment to the Project. During more than a year of work, the Dentons team protected Guinea's legal interests and supported Guinea's efforts to advance the Project. The lawyers on the team, in addition to the subcontractors enlisted in the effort, dedicated more than 10,000 hours to working with the Government, its Ministers and representatives, including more than 7,500 hours spent in the United States. The team produced scores of reports, presentations, memoranda, drafts, negotiator notes and other deliverables including briefings to the Ministry of Mines, the Ministry of Finance, the inter-ministerial working group convened by the Ministry of Mines, and a working group designated by the President of Guinea, which provided real value to the Defendants. Defendants repeatedly asked Dentons to continue with its work, in light of the advocacy and advice that Dentons

provided. Even though unpaid, the team, and its subcontractors, continued to work to support Guinea in reliance on the Government's assurances that it would pay its invoices.

6. Defendants currently owe Dentons $10,214,458.48 plus interest for past due invoices comprising legal fees, out-of-pocket expenses, and the costs of investment banking, engineering, tax specialist and other specialist subcontractors retained by Dentons on behalf of Defendants. Prior to September 2013, Defendants continually acknowledged this debt and made repeated assurances to Dentons that they would arrange payment to Dentons of all amounts owed. Defendants have not, however, paid the outstanding amounts due to Dentons. Despite multiple requests, Defendants have failed to make the required payments.

7. In light of Defendants' continued failure to pay invoices they have admitted they owe, Dentons has been forced to file this lawsuit.

**PARTIES**

8. Plaintiff Dentons US LLP is a law firm authorized to do business in the District of Columbia, with an office located at 1301 K Street, N.W., Suite 600, East Tower, Washington, D.C. 20005. It is a Delaware limited liability partnership. Dentons' presence in the United States dates back to 1906. Since that time, Dentons has lawfully operated under different names, including "Sonnenschein Nath & Rosenthal LLP" and "SNR Denton US LLP." During a time period relevant to this Complaint, on February 28, 2013, the firm changed its name from "SNR Denton US LLP" to "Dentons US LLP."

9. Dentons operates from sixteen locations in the United States, including an office in Washington, D.C. The Washington, D.C. office of Dentons employs more than 120 legal and support professionals. Jonathan D. Cahn, a partner in Dentons' Washington, D.C. office and an acknowledged expert in emerging markets transactions, was the partner in charge of Dentons' engagement with the Republic of Guinea. Mr. Cahn directed a team of Dentons lawyers

specializing in mining, infrastructure and project finance and supervised a consortium of subcontractors, including investment banking firm Lazard Freres, engineering firm Khatib & Alami, a Tax Experts Group led by noted authority on mining fiscal regimes, James Otto, and other specialist subcontractors recruited by Dentons at Defendants' instruction.

10. Defendant the Republic of Guinea is a foreign sovereign state.

11. The President of the Republic of Guinea, Alpha Condé ("President Condé"), was contemporaneously aware, in each instance, that the Ministry of Mines was executing the contractual documentation of the Retainer Agreement in August 2012 and December 2012, that Dentons was providing services to Defendants, that Defendants derived benefit from these services, and that Dentons was and is owed its fees in connection with Dentons' engagement.

12. Defendant the Ministry of Mines and Geology of the Republic of Guinea ("Ministry of Mines" or the "Ministry") is a political subdivision of the Republic of Guinea. Under 28 U.S.C. § 1603 (2012), political subdivisions are integral parts of the state itself. The Ministry of Mines is headquartered in Conakry, Guinea; its official address is BP 295, Conakry, The Republic of Guinea. From January 2011 to January 2014, Mohamed Lamine Fofana ("Minister Fofana") served as the Minister of Mines. On January 20, 2014, Kerfalla Yansane (previously the Minister of Finance) ("Minister Yansane") became the new Minister of Mines and currently serves in that position.

13. The Minister of Mines has actual and apparent authority to execute commercial contracts on behalf of, and binding upon, the Republic of Guinea and the Ministry. Pursuant to Presidential Decree and in accordance with the Constitution of the Republic of Guinea, the President of the Republic of Guinea granted responsibility to the Ministry of Mines to negotiate

and to enter into agreements related to the management of the Republic of Guinea's mineral resources for the benefit of, and binding upon, the Republic of Guinea.

14. Defendants took all of the actions referred to herein pursuant to authorities delegated to the Ministry of Mines by the Republic of Guinea. At all times, the Ministry of Mines acted on behalf of each Defendant.

15. The Republic of Guinea and the Ministry of Mines each accepted the services provided by Dentons and each derived substantial benefit from them.

**JURISDICTION AND VENUE**

16. This Court has subject matter jurisdiction over this controversy pursuant to 28 U.S.C. § 1330(a) (2012), since Defendants are not entitled to immunity pursuant to 28 U.S.C. § 1605. Defendants have waived sovereign immunity pursuant to 28 U.S.C. § 1605(a)(2) for the reasons alleged in this Complaint, including but not limited to, the following facts: the contract and requests for services that form the bases for Dentons' claims constitute commercial activity of a foreign state; with Defendants' knowledge and at their request, Dentons carried on a substantial portion of the work it performed on Defendants' behalf through its United States-based attorneys and staff and in the United States; Defendants' commercial activity has had a direct effect in the United States; Dentons' invoices requested payment in United States dollars via wire to a Dentons bank account in the United States; and, *inter alia*, Defendants made their one payment in United States dollars to a Dentons bank account located in the United States.

17. This Court has jurisdiction over Defendants pursuant to 28 U.S.C. § 1330. Each Defendant is subject to service of process pursuant to 28 U.S.C. § 1608(a).

18. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(f)(4) which permits an action against a foreign state and a political subdivision thereof to be brought in this Court.

## FACTS COMMON TO ALL COUNTS

### A. The Simandou Project.

19. Since at least 1997, the Republic of Guinea has sought to develop one of the largest mining projects in the world, the Simandou Project. According to public reports from Rio Tinto Group ("Rio Tinto"), this multi-billion dollar project involves the development of one of the world's largest iron ore mines in the mountains of Southern Guinea, a 650 kilometer trans-Guinean railway, and a port capable of handling capesized vessels. The investors in the Project include Rio Tinto (50.35 percent), the China Aluminum Corporation (44.65 percent), and the World Bank's International Finance Corporation (5 percent).

20. As the Simandou Project progressed, disputes arose between Rio Tinto and the Republic of Guinea. In April 2011, Rio Tinto, its subsidiary Simfer S.A., and the Government of the Republic of Guinea entered into a publicly disclosed settlement agreement (the "2011 Settlement Agreement") intended to resolve their disputes concerning the Project.

21. Among other obligations, the 2011 Settlement Agreement obliged the parties to negotiate a series of complex mining and infrastructure agreements (the "Investment Framework Agreements"). The Investment Framework Agreements were to transform the agreed-upon principles established in a 2002 Convention de Base and the 2011 Settlement Agreement into new agreements complete with the necessary detail, transparency, and legal form to support the Project.

### B. The Engagement of Dentons by the Republic of Guinea.

22. In early 2012, Defendants requested help from the World Bank in connection with the Project and implementation of the 2011 Settlement Agreement. In response, the World Bank engaged financial advisory firm Taylor-DeJongh to assemble a team to evaluate the Republic of Guinea's need for legal, financial, and technical advisory services.

23. At Defendants' request, Taylor-DeJongh and its advisors attended a series of in-person meetings in late May 2012 with Guinean government officials. Dentons, originally as a member of the Taylor-DeJongh-led advisory group, attended these meetings to assess the Republic of Guinea's need for legal services in connection with the 2011 Settlement Agreement.

24. Dentons was first introduced to Defendants during these May 2012 meetings.

25. Taylor-DeJongh and the other advisors undertaking the needs assessment, including a Dentons team led by Jonathan Cahn, met from June 10 through 15 in Paris with a Government of Guinea delegation led by Minister Fofana and then–Minister of Finance Yansane. During these meetings, Defendants requested that Dentons provide counsel directly to the Republic of Guinea on a number of complex matters related to the Simandou Project and the 2011 Settlement Agreement. On information and belief, Defendants consulted with the World Bank about whether they could retain Dentons directly. The World Bank confirmed to Defendants that the World Bank had "no objection" to Defendants' retaining Dentons, as Dentons did not have a direct engagement with the World Bank.

26. Defendants thereafter retained Dentons to represent their interests in connection with the Simandou Project and the implementation of the 2011 Settlement Agreement. Dentons agreed to this representation and invoiced Defendants at Dentons' standard hourly rates. Defendants agreed to the payment of Dentons' services in writing. On August 25, 2012, Defendants memorialized the retention of Dentons in writing by executing a "Letter of Appointment as Legal Counsel to the Ministry of Mines and Geology – Simandou Project – Conakry, Guinea" (the "August Agreement"). The August Agreement memorialized Dentons' engagement as counsel to the Republic of Guinea, through its Ministry of Mines, as of May 2,

2012 and continued that engagement through September 30, 2012, the extended completion date of the separate and then-ongoing World Bank assessment.

27. Minister Fofana—following consultations with President Condé, the President's Director of Large Projects Mamadi Condé, and other Ministry of Mines representatives, including the Ministry's Legal Counsel Saadou Nimaga—signed and placed the Ministry's official seal on the August Agreement on behalf of Defendants and issued it under the letterhead of the Republic of Guinea, Minister of Mines & Geology. Minister Fofana addressed the August Agreement to Mr. Cahn's attention and to Dentons' Washington, D.C. office at 1301 K Street, N.W., Suite 600, East Tower, Washington, D.C. 20005-3364.

28. In the August Agreement, Defendants agreed to arrange payment to Dentons for all work performed from May 2, 2012 through September 30, 2012, to the extent that such work was not otherwise paid by the World Bank. A true and correct redacted copy of the August Agreement is attached as Exhibit 1.[1] A true and accurate translation from French to English of Exhibit 1 is attached as Exhibit 2.

29. For the period from May 2, 2012 through September 30, 2012, Dentons invoiced $2,120,884.46 in legal fees and services to Defendants. Defendants did not dispute the work performed as reflected in Dentons' invoices or the reasonableness of the invoices.

30. At the request of, and at the direction of Defendants, Dentons continued to provide legal and professional services, including from Dentons' Washington, D.C. office, to Defendants after September 30, 2012 with the understanding that the parties would enter into a

[1] The redactions of Exhibits to this Complaint are intended to preserve the confidentiality of information pursuant to Rule of Professional Conduct 1.6(e)(5). Defendants have previously received and/or sent unredacted copies of each French language Exhibit cited herein.

supplemental agreement covering all work performed on or after October 1, 2012. Defendants expressly confirmed this understanding.

31. On or about December 24, 2012, the parties executed a supplemental written agreement, which continued the parties' contractual relationship (the "December Agreement"). Minister Fofana signed, initialed each page, and placed the Ministry's official seal on the December Agreement on behalf of Defendants with, on information and belief, the express approval of President Condé. The December Agreement was issued on Dentons' letterhead and was signed by Mr. Cahn in Washington, D.C.

32. The December Agreement represented a continuation of Dentons' work for the Republic of Guinea under the August Agreement, which was attached as Schedule B, and expressly included Dentons' work as of October 1, 2012. It memorialized both Defendants' instruction that Dentons continue its representation in connection with the Simandou Project and Defendants' renewed agreement to pay in accordance with Dentons' standard hourly rates pursuant to Dentons' invoices. The December Agreement further confirmed Defendants' prior agreement to cover all amounts Defendants owed Dentons for work performed from May 2, 2012 through September 30, 2012.

33. Schedule A to the December Agreement was a copy of Dentons' Global Terms of Business, which included conditions applicable to the United States and was incorporated by reference in the December Agreement. Attached as Schedule B to the December Agreement was a copy of the August Agreement. Attached as Schedule C to the December Agreement was a summary of unpaid invoices for the period from May 2, 2012 through October 31, 2012 totaling $3,012,126.00. A true and correct redacted copy of the December Agreement is attached as Exhibit 3. A true and accurate translation from French to English of Exhibit 3 is attached as

Exhibit 4. A true and correct copy of the redacted version of the December Agreement countersigned by Defendants is attached as Exhibit 5.[2] A true and accurate translation from French to English of Exhibit 5 is attached as Exhibit 6.

34. The December Agreement confirmed that Dentons' fees and costs were due upon receipt of its invoices. The December Agreement also served as Defendants' acknowledgement that they owed Dentons the unpaid invoices incurred from May 2, 2012 through October 31, 2012. As an accommodation, Dentons agreed to defer payment on its forthcoming invoices (*i.e.*, those covering the time period from October 1, 2012 forward) as long as the Ministry implemented and continued "in good faith all efforts necessary to secure funding for this representation, either through the Ministry's budget or through external funding."

35. Pursuant to the Retainer Agreement, Defendants authorized Dentons to engage advisors and experts as required by the Project in order adequately to advise Defendants. In accordance with the December Agreement and as instructed by Defendants, Dentons assembled a team with not only the legal, but also the financial, fiscal, and engineering, expertise to represent Defendants.

36. By executing the Retainer Agreement, Defendants agreed to pay Dentons its standard hourly fees and its costs, including costs for advisors and experts that Dentons retained on behalf of Defendants.

37. Dentons' personnel located in the United States performed a substantial amount of the work for Defendants and did so primarily in the United States, and in particular in Washington, D.C. Defendants routinely held telephone calls with Dentons' personnel located in the United States, exchanged emails with Dentons' personnel located in the United States, and

---

[2] The countersigned version of the December Agreement does not reflect Dentons' letterhead information because of a printing issue at the Ministry of Mines.

exchanged hard-copy correspondence with Dentons' personnel located in the United States. In addition, on at least two occasions, Special Advisor to the President of Guinea, Idrissa Thiam, traveled to Dentons' Washington, D.C. office to meet with Dentons' personnel to discuss Dentons' services and fees. Defendants' activities in the United States primarily occurred with Dentons' Washington, D.C. attorneys located at its District of Columbia address.

38. In response to the Republic of Guinea's requests for assistance, members of Dentons' multi-disciplinary team, including attorneys and staff from Dentons' offices in the United States, worked on behalf of Defendants and at their direction.

39. Dentons' legal team dedicated more than 10,000 hours to its representation of Defendants in support of the Simandou Project. More than 7,500 of those hours were worked in the United States.

**C. The Republic of Guinea Approved Dentons' Invoices But Failed to Pay Them.**

40. As of March 2013, Defendants had not paid any of the invoices submitted by Dentons. On March 24, 2013, Mr. Cahn spoke by telephone with Minister Fofana regarding payment of Dentons' outstanding invoices. Minister Fofana represented that Defendants were working on arrangements for payment of the outstanding invoices and reiterated Defendants' commitment to ensure payment for all of Dentons' past and continuing work. Defendants memorialized this discussion in a signed letter to Mr. Cahn dated March 25, 2013, bearing the official seal of the Ministry of Mines of the Republic of Guinea.

41. In the March 25 letter, Defendants affirmed the validity of the Retainer Agreement that Defendants entered into with Dentons and once again reiterated Defendants' intention to comply with their payment obligations under the agreement. Minister Fofana further

represented that Rio Tinto had agreed to fund the fees for Dentons' services. He assured Dentons, however, that if Rio Tinto did not fund the fees, the Republic of Guinea would do so:

> Further to our telephone conversation of Sunday, March 24, 2013, around 5pm, I am honored to confirm with you that the Republic of Guinea, as client, is prepared to perform all of its contractual obligations contained in the agreement between you and the Ministry of Mines and Geology in terms of providing support and advice in monitoring, negotiating, drafting and implementing the undertakings relating to the Simandou file.
>
> In this regard, I would like to reassure you that it is agreed that Rio Tinto will pay your fees and all expenses duly approved by the competent bodies of the State, actually incurred in the performance of your missions and having taken delivery of documents required by the Guinean State, through its divisions involved in the Project, mainly the Ministry of Mines and Geology.
>
> However, in the event where Rio Tinto does not pay the fees and expenses as indicated above, the Guinean State will pay such fees and expenses which, as with the other fees shall be included in the costs of the Simandou Project.
>
> Lastly, I would like to draw your attention to the urgency of the delivery of the documents and the pressing need to comply with all delivery timetables agreed to for the required documents, some of which are a critical part in completing the project.

A true and correct copy of the March 25, 2013 letter is attached as Exhibit 7. A true and accurate translation from French to English of Exhibit 7 is attached as Exhibit 8.

42. On or about April 1, 2013, and pursuant to President Condé's instruction, Defendants made a partial payment of $2,000,000.00 against the amounts they then owed pursuant to the Retainer Agreement. Defendants recognized that this payment was only, and Dentons accepted this payment only as, a partial payment against the invoices, with the remaining outstanding amounts still due and owing. This was the first and only payment Defendants made or arranged. Pursuant to the direction in Dentons' invoices, Defendants made this partial payment in United States dollars via wire to Dentons' bank account in the United States.

43. At Defendants' request, on or about April 9, 2013, Dentons sent Defendants invoices for the work performed from May 2012 through March 2013, which included an invoice for a specially created group of third party experts called the "Tax Team." Those invoices totaled $9,193,947.58, an amount that did not reflect the partial payment of $2,000,000.00 made only days earlier. Dentons subsequently applied the partial payment of $2,000,000.00.

44. In July 2013, Dentons invoiced Defendants for the work Dentons performed from April 2013 through June 2013. Those invoices totaled an additional $3,020,510.90. While Defendants have acknowledged that they owe the amounts invoiced, they have not made payment on these invoices.

45. On August 7, 2013, Minister Fofana requested by email that Mr. Cahn travel to the Republic of Guinea, stating, "I am requesting you to be in Conakry on Friday August 9, 2013 for discussion about your payment. The Government has taken the decision to pay everything." (Emphasis added.) A true and correct copy of the email is attached as Exhibit 9.

46. A Dentons team, which included Mr. Cahn, traveled to the Republic of Guinea in response to this request. Minister Fofana represented to the Dentons team that he had instructed the Ministry of Finance of the Republic of Guinea to pay the invoices and had made funds available to the Ministry of Finance to make the payments. In an August 10 meeting attended by Minister Fofana and then–Minister of Finance Yansane, Minister Fofana acknowledged that Defendants owed the moneys to Dentons and urged Minister Yansane, in his capacity as Minister of Finance, to make the payment.

47. At the meeting, Minister Yansane admitted that the Government had not budgeted for the owed amounts. To address this failure, he proposed that the World Bank review the invoices and make payment to Dentons in accordance with funding made available to the

Government of the Republic of Guinea for this purpose by the Bank. To the extent the Bank did not pay the invoices, Minister Yansane stated that the Government of Guinea would do so. Minister Yansane designated Special Advisor to the President Thiam to work with Dentons to resolve the matter.

48. Despite Dentons' continuing efforts to work with Defendants on a payment plan and to obtain third-party financing for the fees, Defendants have failed to pay or to provide a plan for payment of the amounts owed under the Retainer Agreement.

49. Defendants have not implemented in good faith efforts to secure funding for the representation. To the contrary Defendants have, since at least September 2013, ceased any efforts to secure funding to pay the invoices and have not paid them.

50. Neither the World Bank nor any other third party has paid any of Dentons' invoices on behalf of the Republic of Guinea.

**D. The Amounts Invoiced, Due, and Owing.**

51. Dentons' legal and professional services were performed for the benefit of Defendants, with the knowledge of Defendants, and on behalf of Defendants.

52. Dentons sent invoices to Defendants with respect to the legal work it performed for Defendants. Those invoices described in detail the attorney, paralegal or other timekeeper who performed the work; the hourly rate of the timekeeper; the work performed; the amount of time worked; and the costs and expenses associated with the engagement. Dentons translated the descriptions of work into French for Defendants' convenience.

53. Dentons' invoices were issued from its Washington, D.C. office, were signed by Mr. Cahn, and were notarized by a Notary Public of Washington, D.C.

54. The invoices reflected amounts in United States dollars and requested payment via wire to a Dentons account in the United States.

55. Dentons tendered the following invoices to Defendants:

| Invoice | Amount |
| --- | --- |
| May 2012 | $44,388.19 |
| June 2012 | $570,748.96 |
| July 2012 | $221,085.10 |
| August 2012 | $398,078.46 |
| September 2012 | $886,583.75 |
| October 2012 | $779,334.17 |
| November 2012 | $904,429.56 |
| December 2012 | $1,007,653.47 |
| January 2013 | $1,570,354.87 |
| February 2013 | $1,528,158.65 |
| March 2013 | $815,460.40 |
| Tax Team | $467,672.00 |
| April 2013 | $1,150,900.67 |
| May 2013 | $1,268,556.68 |
| June 2013 | $601,053.55 |

56. Defendants received each of the invoices listed in paragraph 55, and such invoices total $12,214,458.48.

57. Defendants have made a single payment of $2,000,000.00 against the amounts owed.

58. Defendants never disputed that they requested the legal services associated with the invoices and never disputed that Dentons performed the legal services for Defendants.

59. A total of $10,214,458.48 in fees and costs plus interest remains past due and owing to Dentons.

**COUNT I: BREACH OF CONTRACT**
**(Against All Defendants)**

60. Paragraphs 1 to 59, *supra*, are incorporated and re-alleged as if fully set forth herein.

61. Dentons and Defendants entered into an enforceable contract, whereby Dentons agreed to provide legal services and Defendants agreed to pay for them.

62. The professional services contracted for and requested by Defendants are purely commercial activities, a substantial portion of which were carried on in the United States and which also had a direct impact in the United States, in performance of which or non-performance of which the Republic of Guinea is not entitled to sovereign immunity, as provided in 28 U.S.C. § 1605(a)(2).

63. Dentons fully performed its obligations under the parties' contract by providing the legal services in a manner conforming to the requirements of those contracts.

64. Defendants have breached their contractual obligations by failing to pay fully for the legal services provided by Dentons as reflected in the invoices identified above.

65. Defendants have breached their contractual obligations by failing to undertake good faith efforts to obtain the financing to pay fully for the legal services provided by Dentons as reflected in the invoices identified above.

66. Dentons has been damaged by Defendants in an amount equal to $10,214,458.48, plus pre- and post-judgment interest as provided by the terms of the parties' contractual agreements and by law. Dentons also has been damaged by incurring the expense of bringing this action, including reasonable attorneys' fees.

**COUNT II: QUANTUM MERUIT**
**(Against All Defendants)**

67. Paragraphs 1 to 59, *supra*, are incorporated and re-alleged as if fully set forth herein.

68. Dentons provided valuable services for the benefit of Defendants and at the request of Defendants.

69. Defendants were aware that Dentons was providing these services, which Defendants accepted and from which they benefited.

70. Dentons engaged in frequent communications with Defendants and sent statements of its services.

71. Defendants knew that Dentons expected to be paid for its services.

72. Defendants did not pay Dentons for all of the services they received from Dentons.

73. The reasonable value of the services for which Defendants did not pay equals or exceeds $10,214,458.48.

74. Dentons has been damaged by Defendants in an amount equal to $10,214,458.48, plus pre- and post-judgment interest as provided by the terms of the parties' contractual agreements and by law. Dentons has also been damaged by incurring the expense of bringing this action, including reasonable attorneys' fees.

**COUNT III: UNJUST ENRICHMENT**
**(Against All Defendants)**

75. Paragraphs 1 to 59, *supra*, are incorporated and re-alleged as if fully set forth herein.

76. Through its legal work, Dentons conferred substantial benefits on Defendants.

77. Defendants accepted and retained the benefits of Dentons' services.

78. Defendants did not pay Dentons for all of the services and benefits that they received from Dentons.

79. The value of the benefits that Defendants did not pay for equals or exceeds $10,214,458.48.

80. Under the circumstances, it is unjust for Defendants to retain the benefit of Dentons' services without payment.

81. Dentons has been damaged by Defendants in an amount approximating $10,214,458.48, plus pre- and post-judgment interest as provided by the contract and by law.

Dentons has also been damaged by incurring the expense of bringing this action, including reasonable attorneys' fees.

**COUNT IV: ACCOUNT STATED**
**(Against All Defendants)**

82. Paragraphs 1 to 59, *supra*, are incorporated and re-alleged as if fully set forth herein.

83. Over the course of thirteen months, Dentons sent invoices to Defendants for the legal services Dentons was performing at Defendants' request and on Defendants' behalf.

84. Those statements set forth the work performed and the amounts due.

85. Defendants accepted the statements, did not object to them, and induced Dentons to continue to provide services.

86. Defendants agreed to pay for the legal services that Dentons performed at their request and for their benefit, according to the monthly statements that they received and to which they did not object.

87. While Defendants have repeatedly indicated their intention to pay the amounts due, Defendants have failed to pay Dentons for the amounts due in these statements.

88. The unpaid statements currently amount to $10,214,458.48.

89. By Defendants' failure to pay the unpaid statements, Dentons has been damaged by Defendants in an amount equal to $10,214,458.48, plus pre- and post-judgment interest as provided by the parties' Agreements and by law. Dentons has also been damaged by incurring the expense of bringing this action, including reasonable attorneys' fees.

**PRAYER FOR RELIEF**

For the reasons set forth herein, Dentons respectfully prays that this Court:

a. Assume jurisdiction over this action pursuant to 28 U.S.C. §§ 1330(a) and 1605(a)(2);

b. Declare that the failure of Defendants to pay the fees and expenses for legal services requested by them and provided to them by Dentons constitutes a breach of the contract entered into by Defendants and Dentons;

c. Enter judgment in favor of Dentons and against Defendants for breach of contract damages in the amount of $10,214,458.48;

d. Alternatively award to Dentons and against Defendants judgment for quantum meruit damages in the amount of $10,214,458.48;

e. Alternatively award to Dentons and against Defendants judgment for unjust enrichment damages in the amount of $10,214,458.48;

f. Alternatively award to Dentons and against Defendants judgment for account stated damages in the amount of $10,214,458.48;

g. Grant Dentons pre- and post-judgment interest on the above-mentioned sums, from the date each element of the unpaid debt became due and payable, at the rate established by law;

h. Award to Dentons the costs of bringing this action, including reasonable attorneys' fees and expenses; and

i. Grant Dentons such additional relief as the Court shall deem just and equitable.

Respectfully submitted,

_/s/ Michael S. Sundermeyer____

Michael S. Sundermeyer (D.C. Bar No. 931873)
Ana C. Reyes (D.C. Bar No. 477354)
Williams & Connolly LLP
725 12th Street, NW
Washington, D.C. 20005
Tel. (202) 434-5000
Fax (202) 434-5029
msundermeyer@wc.com
areyes@wc.com

*Attorneys for Plaintiff Dentons US LLP*

Dated: August 1, 2014