IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| DENTONS US LLP,<br><br>                    Plaintiff,<br><br>   v.<br><br>THE REPUBLIC OF GUINEA, and<br><br>THE MINISTRY OF MINES AND<br>GEOLOGY,<br><br>                    Defendants. | Case No. 1:14-cv-1312-RDM |

## REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

Defendants moved to dismiss the Complaint on five distinct grounds. Success on any one of the grounds would mandate the dismissal of the case. Plaintiff Dentons US has filed a Memorandum in Opposition to Defendant's Motion to Dismiss (the "Opposition"). The Defendants hereby Reply to the Plaintiff's Opposition and support the Defendants' Motion to Dismiss.

Although Dentons US's Opposition argues against dismissal, the arguments, admissions, and omissions in the Opposition brief provide powerful support for a dismissal of the action. Dentons US's recitation of facts in the Opposition ignores key facts contained in its own Exhibits to the Complaint. The Opposition also introduces new facts that are outside of the four corners of the Complaint that form the initial basis for the Motion to Dismiss. The purpose of this Reply is not to review and repeat the prior arguments in the Defendants' prior brief, but to address the critical issues brought to a decision point by the admissions and omissions in the Plaintiff's Opposition Brief.

**I.**      **Facts Admitted by Plaintiff Dentons US**

In light of the allegations in and Exhibits to the Complaint, as well as the admissions by Dentons US in its Opposition Brief, this Court may accept as true the following facts for purposes of deciding the Defendants' Motion to Dismiss:

1.      Dentons acknowledges that neither the Republic of Guinea nor its Ministry of Mines has waived sovereign immunity.  Mem. in Opp'n to Def. Mot. to Dismiss 18-19, 22.

2.      Any jurisdiction of this Court must be based on the alleged "commercial activity" of the Government of Guinea as governed by the Retainer Agreement.  Compl. ¶ 16, Exs. 3-4. The original Retainer Agreement is attached to the Complaint as Exhibit 3.  An English translation thereof is attached to the Complaint as Exhibit 4.  Compl. Exs. 3-4 ("the Retainer Agreement").

3.      The Retainer Agreement was executed by Minister Mohamed L. Fafana of the Defendant Ministry of Mines.  Defendant Republic of Guinea did not sign a Retainer Agreement and none was requested.  Compl. ¶ 31, Exs. 3-4.

4.      The Retainer Agreement recites that the contracting parties are the Ministry of Mines and Geology of the Republic of Guinea (the "Ministry" or "Client") and collectively "SNR Denton US LLP and its affiliates (the 'Firm')."  Compl. ¶ 31, Exs. 3-4.

5.      The Retainer Agreement is printed on SNR Denton letterhead and not SNR Denton US LLP letterhead.  Retainer Agreement, Compl. Exs. 3-4 at 1.

6.      The Retainer Agreement expressly recited that the representation would be provided through the combined Practices in London, Washington, and Paris.  Retainer Agreement, Compl. Exs. 3-4 at 4.

7.      The Firm's Table of Contents to its "*Conditions Générales*" or "Terms of Business" of the original Retainer Agreement enumerates "*Conditions Locales*" or "Location Terms of Business" not only for the United States, but also for SNR Denton's Practices in sixteen other countries.  Retainer Agreement, Compl. Ex. 3 at 7.[1]

8.      The Firm knew at the time of contracting that it was contracting with a client that lacked the ability to pay its fees.  The Retainer Agreement recited specifically that ". . . the Firm understands that neither the Ministry nor the Government of the Republic of Guinea currently have the necessary funds to pay for the costs and fees of representation. . . ." Retainer Agreement, Compl. Exs. 3-4 at 4.

9.      The Firm agreed to "defer any collection of fees and expenses billed in accordance with [the Retainer] Letter and in accordance with the Terms and Conditions until the appropriate financing is in place." *Id.*

10.      Financing was never put in place.  Compl. ¶ 65.

11.      The Firm agreed "to seek, with third parties, various options for the financing of its representation and to present these options in the form of a written proposal to the Ministry for its consideration."  Retainer Agreement, Compl. Exs. 3-4 at 4.

12.      The Firm has failed to allege any efforts that it took to present any written financing offers to the Ministry.  Compl. *passim.*

13.      Despite its knowledge that the Defendants were unable to pay for its legal services, the Firm proceeded to bill the Ministry approximately $1 million per month for legal services that Defendants could not pay.  Compl. ¶ 55, 56.

---

[1] Defendants note that Exhibit 4 to the Complaint, the English translation of the Retainer Agreement, is missing two pages that are part of the French original, Exhibit 3.   These pages – 7 and 8 of Exhibit 3 – are the Cover Page and Table of Contents to the SNR Denton "*Conditions Générales*" or "Terms of Business."  Compl. Ex. 3-4.

14.    The Ministry made a payment of $2 million on April 1, 2013 and, on August 9, 2013, designated a Special Advisor to the President of the Republic "to work with Dentons to resolve the matter." Compl. ¶ 42, 47.

15.    The Firm admits that Dentons is involved in "continuing efforts to work with Defendants on a payment plan and to obtain third-party financing for the fees. . ." Complaint ¶ 48.  At the same time, however, the Firm failed to "defer any collection of fees and expenses . . . until the appropriate funding was in place." Retainer Agreement, Compl. Exs. 3-4 at 4.

16.    Dentons admits that a substantial amount of the work it completed was performed by the Practices outside of the United States.  Compl. ¶ 5 and 39.  According to the Retainer Agreement, the overseas Practices would be those in London and Paris.  Compl. Exs. 3-4 at 5.

17.    The Firm's United States affiliate brought this collection suit prior to having presented a single written financing option to the Ministry.  Compl. ¶ 40-50.

18.    Dentons filed suit outside of the "formal complaints procedure" referenced in the Retainer Agreement.[2]  *Id.*

19.    The Firm's Location Terms of Business do not authorize the Firm to file suit in any United States District Court.  Retainer Agreement, United States Location Terms of Business p. 22- 23, Compl. Exs. 3 at 32-34, 4 at 29-30.

20.    Dentons US filed suit in a United States District Court despite provisions in the Terms of Business Location that preclude such a filing.  Retainer Agreement, United States Location Terms of Business p. 6-7, 22-23, Compl. Exs. 3 at 15-16, 32-34, 4 at 13-14, 29-30.

---

[2] The Undersigned counsel made a formal request of Plaintiff's counsel for the "formal complaints procedure" referenced in the Retainer Agreement.  Compl. Exs. 3-4 at 5.  To date, no such procedure has been provided.

21.     Dentons US filed suit without the participation of the London Practice, yet is suing for the fees generated by the London Practice.  Retainer Agreement Compl. ¶ 39, Exs. 3-4 at 4.

22.     The Retainer Agreement's United Kingdom Location Terms of Business mandate that any dispute concerning the fees charged by the London Practice must be resolved through either the exclusive jurisdiction of the English courts or through arbitration.  Retainer Agreement, United Kingdom Location Terms of Business p. 20- 22, Compl. Exs. 3 at 30-32, 4 at 27-29.

23.     Dentons US does not dispute the existence of Guinean law that requires a suit on a contract be filed in the jurisdiction where the defendant is located.  Mem. in Supp. of Mot. to Dismiss 7, fn 14 (referencing *La Code de Procédure Civile, Economique et Administrative de la République de Guinée*, Articles 157-166).

As analyzed below, these uncontested facts lead to the conclusion that Dentons US's case should be dismissed.

## II.     Dentons Misconstrues the Real Parties in Interest

Before addressing the specific arguments that lead to dismissal, one must first address the controversy as to the identity of the parties named in the law suit.  First, Dentons US seeks to misconstrue the identity of the contracting parties to the Retainer Agreement.  The Plaintiff argues – despite the clear language of the contract that it provided with the Complaint – that Dentons US is the contracting party.  As demonstrated in the Defendants' prior Brief, the contract at issue, the "Retainer Agreement," is between the entire SNR Denton multinational law firm (the "Firm" identified in the Retainer Agreement) and not simply the United States Practice Group.  In Dentons US's Opposition, the Plaintiff refused to recognize the plain language of

SNR Denton Retainer Agreement between "the Firm" and the Ministry of Mines. *See e.g.*, Plaintiff's erroneous footnote 4 on page 22 of the Opposition in which it asserts without any analysis that "Defendants contracted with the United States member Practice – a legally separate entity – the only Location Terms relevant to this Action are the United States Location Terms." *Id.*

Dentons US's argument that it alone is the contracting party without citation to any language in the Retainer Agreement may be rejected by this Court at this early stage. The specific terms of the Retainer Agreement – an Exhibit to the Complaint – can provide the basis for granting a Motion to Dismiss, as they are within the four corners of the Complaint. Compl. Exs. 3-4. This Court may therefore rule definitively on the identity of the contracting parties based on the plain language of the Agreement that is included as an Exhibit to the Complaint. *Id.*

If Dentons US sought to draft a retainer agreement that was solely between it and the Ministry of Mines of the Republic of Guinea, it has failed to do so through its own drafting language. Further, Plaintiff Dentons US's Opposition Brief failed to provide this Court any basis to reject the plain language that the contracting party was the international "Firm" of SNR Denton.

### III. The Identity of the Contracting Parties Has a Vital Impact on the Choice of Law and Choice of Forum Issue.

Why does Dentons US misrepresent the identity of the contracting parties? Dentons clings to the fiction that Dentons US is the contracting party because to admit otherwise would seriously undermine its arguments for choice of law and the weighing of factors that lead to a "choice of forum" determination. Dentons recognizes that the jurisdiction of this Court is all the more tenuous if the Plaintiff is an international law firm based in the United Kingdom suing a sovereign nation in Africa. In footnote 4 on page 22 of the Opposition, Dentons US argues that

only the Location Terms of the United States apply because the contracting party is Dentons US. A different result – dismissal based on the application of the Location Terms – would flow from the recognition that the Firm is the contracting party. Therefore, Dentons goes to great lengths to misconstrue the identity of the contracting party in the Complaint and in its Opposition Brief.

To further the fiction that the contracting party is a U.S. law firm, Dentons argues that the majority of work was performed by the United States Practice as compared to the London Practice, and that such imbalance favors the U.S. Practice.  Paragraphs 5 and 39 of the Complaint state that 75 percent of the hours worked were performed by the Dentons US.  However, this argument serves only to admit that the work involved Practices outside of the United States.  The chart below provides a comparison between the legal fees billed in the United States offices of the Firm and the United Kingdom offices of the Firm.  The chart demonstrates the work began with the London office handling the majority of the work and that there were several months in which the United Kingdom office billed substantially more than the U.S. office.

| MONTH | TOTAL Fee and Costs | Fee w/o Costs | US FEE | UK FEE | Other Office Fee |
|---|---|---|---|---|---|
| May 2012 | $44,388 | $44,344 | $9,183 | $35,160 | |
| June | $570,748 | $521,011 | $317,986 | $203,024 | |
| July | $221,085 | $167,427 | $147,673 | $19,754 | |
| August | $398,078 | $345,115 | $295,939 | $49,176 | |
| September | $886,583 | $808,436 | $600,722 | $207,714 | |
| October | $779,334 | $599,003 | $402,837 | $196,166 | |
| November | $904,429 | $632.010 | $433,510 | $198,499 | |
| December | $1,007,653 | $824,984 | $525,441 | $299,543 | |
| January 2013 | $1,570,354 | $1,213,405 | $586,239 | $618,947 | $8,219 China |
| February | $1,528,158 | $627,313 | $256,518 | $370,795 | |
| March | $815,460 | $794,738 | $372,900 | $421,838 | -0- |
| Tax Team | $467,672 | $0 | $0 | $0 | |
| April | $1,150,900 | Unknown | Unknown | Unknown | |
| May | $1,268,556 | Unknown | Unknown | Unknown | |
| June | $601,053 | Unknown | Unknown | Unknown | |

There can be no dispute that the Retainer Agreement was between the international law firm of SNR Denton and not Dentons US. The fallacy of Dentons US's position is again demonstrated by the April 3, 2013 invoice (attached hereto as Exhibit 1 for January 2013 services) issued by Dentons UKMEA LLP located at 112 Avenue Kleber, 75116 Paris, France for the amount of $618,947 in professional services: "Advising Guinean government on mining and infrastructure project." The invoice lists the VAT (Value Added Tax) Registration Number, FR 84 512 435 116, of a French company, not Dentons US, for purposes of determining the value added tax for the legal services. The invoice is on letterhead of "Dentons – *Avocats au Barreau de Paris*" ("Dentons – Lawyers of the Paris Bar"). Dentons US has included this amount in its claim against Guinea although the services were clearly not performed by Plaintiff Dentons US.

The figures in the chart and the invoice attached hereto as Exhibit 1 are derived from information outside of the four corners of the Complaint, but indicate that the Court's determination of jurisdiction may require some further factual development subsequent to an analysis of the pleadings, as Dentons pleadings may be false. *See* the "Factual Challenge" analysis below in Section V.

**IV.     Plaintiff Dentons US Has Waived Any Right to Sue in a United States Court.**

In another admission, Dentons US acknowledges that neither the Republic of Guinea nor its Ministry of Mines has waived sovereign immunity. Mem. in Opp'n to Def. Mot. to Dismiss 18-19. Dentons US argues that such an express or implied waiver is not necessary under the Foreign Sovereign Immunities Act, 28 U.S.C. § 1602 et seq. ("FSIA"). The effort that Plaintiff Dentons US devotes to this argument serves to hide the more relevant question that Dentons failed to address: Did SNR Denton waive its right to sue the Government of Guinea in a United

States District Court?  The Defendants included in their Brief a chart summarizing all of the choice of forum designations in the Retainer Agreement's Location Terms of Business.  That chart showed that SNR Denton designated forums for disputes all over the world, but in not one instance did the Firm indicate that it would hale any of its clients into a United States court, federal or state.

The requirement that a court have personal jurisdiction is derived from the Due Process Clause of the Amendments to the Constitution. The personal jurisdiction requirement represents a restriction on judicial power not as a matter of sovereignty, but as a matter of individual rights and liberty.  *Insurance Corp of Ireland, Ltd. v. Compagnie des Bauxites de Guinea*, 456 U.S. 694 (1982).  Thus, the test for personal jurisdiction requires that "the maintenance of the suit . . . not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington*, 326 U.S. 310 (1945), quoting *Milliken v. Meyer,* 311 U.S. 457 (1940).  Because the requirement of personal jurisdiction represents an individual right, it can, like other such rights, be waived.  A variety of legal actions or inactions have been taken to represent express or implied consent to the personal jurisdiction of the court.  In *National Equipment Rental, Ltd. v. Szukhent*, 375 U.S. 311 (1964), the Supreme Court held that "parties to a contract may agree in advance to submit to the jurisdiction of a given court." *See also Petrowski v. Hawkeye-Security Co.*, 350 U.S. 495, (1956).  In addition, lower federal courts have found jurisdictional waivers in agreements to arbitrate – agreements that are essentially a waiver of jurisdiction of a federal court. *See Victory Transport Inc. v. Comisaria General de Abastecimientos y Transporte*s, 336 F.2d 354 (CA2 1964); 2 J. Moore & J. Lucas, Moore's Federal Practice ¶ 4.023, n. 22 (1982) and cases listed therein.  As discussed below, Plaintiff Dentons US has waived its right to adjudicate in a United States court by the express and implicit terms of the Retainer Agreement, by its

agreement to arbitrate, and by failing to supersede the operation of Guinean "choice of forum" law.  Compl. Exs. 3-4.  The suit in the United States should be dismissed on this basis alone.

> **A.    Dentons US failed to designate a choice of forum in the Retainer Agreement, while SNR Denton UK, LLP designated English Courts as the exclusive Court for resolving fee disputes.**

The Plaintiff's Opposition Brief acknowledges that the SNR Denton Retainer Agreement was sloppily drafted.  Dentons US acknowledges that it failed to designate a choice of forum or choice of law provision for the particular Retainer Agreement, even though it provided within the Retainer Agreement choice of law and choice of forum provisions for work performed all over the world for SNR Denton's other practices.  *See* Chart of Relevant Location Terms of Business, Def. Mem. in Supp. of Mot. to Dismiss 8-9.  Dentons US's admission that no forum was designated is correct with respect to Dentons US – Washington Office.  However, as addressed above in Section II, the Retainer Agreement is a contract involving not just Dentons US, but the affiliated practices involved in representing the Ministry of Mines.

With respect to the United Kingdom Practice, the Retainer Agreement's Location Terms of Business unambiguously state that for any dispute involving fees and charges from the legal practice operated in London, the parties agree "to submit to the exclusive jurisdiction of the English Courts.  However, we [the Firm] may, at our sole option, refer the claim dispute or difference to arbitration in London before a single arbitrator…."  Retainer Agreement, United Kingdom Location Terms of Business p. 22, Compl. Ex. 4 at 29.  Dentons US admits that part of the work was performed in the United States and part was performed by the London Practice.  Compl. ¶ 39, Exs. 3-4 at 4..  If Dentons US is suing to collect fees generated from the work of the London Practice, it must abide by its own Location Terms of Business that govern such work.

Here, the Court must interpret the contract "*in pari materia*" so that all of its provisions may be read consistently.[3]  If there is (1) as admitted by Dentons US, no choice of forum provided for the Washington Office of the Firm, (2) a mandatory forum designated for the London Office, and (3) work is being performed by both Offices, the only consistent way to interpret the Retainer Agreement is that the mandatory forum designated by the London Practice has priority for any dispute involving both Practices.  The Plaintiff's selection of this United States District Court for its lawsuit is contrary to any consistent and/or logical reading of the Retainer Agreement and its Terms of Business.

**B.      Guinean Law requires that the Suit must be brought in Guinean Courts.**

Another critical issue that impacts the choice of forum decision was ignored by Dentons US in its Opposition brief: Under Guinean law, jurisdiction lies within the court district where the Defendant may be found or services delivered, unless there is an express agreement among the contracting parties to accept another jurisdiction.   Dentons US failed to address the requirements of Guinean law cited in the Defendants' prior Brief.  *See, generally, La Code de Procédure Civile, Economique et Administrative de la République de Guinée*, Title V, Chs. 1-2. In general terms, Guinean law places jurisdiction in the tribunal where the defendant is located or services delivered.  *See Id.* Articles 157 -166. Specifically, Article 166 provides that any clause which directly or indirectly, bypasses the rules of territorial jurisdiction is deemed null and void unless it was (1) agreed between the contracting parties in their business capacities and (2) specified in a very apparent manner to the other party.  Plaintiff Dentons US failed to mention

---

[3] Another Latin phrase for contract interpretation is also relevant to this dispute: *Verba Fortius Accipiuntur Contra Proferentem*, a contract is interpreted against the person who wrote it.  Any ambiguity in the choice of forum and choice of law must be construed against the Firm that drafted the contract.

this provision of Guinean law in its Opposition because there is no way to address it without acknowledging that Dentons filed the suit in the wrong jurisdiction.

Dentons admits that there was no express provision that would designate an agreed forum, much less supersede the mandate of Guinean law and constitute an express agreement to litigate in U.S. courts.  SNR Denton's Retainer Agreement provides express guidance confirming the priority of local law.  Compl. Ex. 4 at 7.  Section 24 of the Global Terms of Business provides guidance for "severability" when there is a conflict between the Retainer Agreement and the requirements of local law: "For the avoidance of doubt, any terms in an Engagement Agreement will not apply if there is an overriding contrary provision of law which is not capable of exclusion by these terms."  *Id.*  In short, if there is some implicit provision within the Retainer Agreement that might allow a law suit in a United States court, the conflict between such an implication and the Guinean law requirement for the Guinean courts must be resolved in favor of the choice of forum Articles 157 through 166 of the Guinean *Code de Procédure Civile*.

Here, the Retainer Agreement does not specify territorial jurisdiction in the United States and there has been no commitment by the Ministry of Mines or the Republic of Guinea to supersede the default "choice of forum" in the courts in Guinea where the Defendant is located and services were delivered.  *See, generally*, Compl. Exs. 3-4.  Article 166 of the Guinean *Code de Procédure Civile* mandates that in the absence of a designated jurisdiction agreed to by both parties, the suit must be brought in Guinea.

Therefore, pursuant to the analysis of Subsections A and B, either there is a clear designation of the English courts for work performed by the London Practice, or there is no designation for the Washington Practice that would override the Guinean law requirement for a Guinean court.  Under either argument, the suit cannot be brought in a U.S. court.  The Retainer

Agreement can only be satisfied if the dispute is brought in the courts in the England and Guinean law can only be satisfied if the dispute is brought in the courts in Guinea.  Dentons US's decision to file this suit in a United States District Court for fees incurred worldwide by SNR Denton is contrary to both requirements.

### C.      The Choice of Law factors give priority to the interests of the Sovereign.

The determination as to whether the local law of Guinea applies to the forum selection or whether the express language or any implication drawn from the Retainer Agreement govern the choice of forum decision boils down to a "choice of law" issue embedded within the "choice of forum" question.  How does Dentons US address the choice of law issue?  It simply asserts by fiat that District of Columbia law applies under choice of law rules.[4]  Dentons recites the factors to be weighed in a choice of law analysis, but then fails to apply the alleged facts in its Complaint to those factors.

The choice of law questions are highly fact specific and require a separate analysis by the Court.   In *Century Int'l Arms, Ltd. v. Fed. State Unitary Enter. State Corp. 'Rosvoorouzheinie'*, 172 F. Supp. 2d 79 (D.D.C. 2001), this Court weighed the factors in a case involving a foreign sovereign and gave the sovereign's interest paramount weight:

> Most of the traditional factors used to make this determination—the place of the injury, the place where the conduct occurred, the domicile of the parties, the place where the relationship is centered, and the location of the subject matter of the contract—favor neither Russia nor Quebec, because the alleged contract was executed by means of a series of faxes between Russia and Quebec, involving a Russian company and a Quebec company.

---

[4] Dentons US places great reliance in its Opposition on the decision in *Lanny J. Davis & Assocs. LLC v. Republic of Equatorial Guinea*, 962 F. Supp 2d 152, 159 (D.D.C. 2013).  Such reliance is misplaced.  The sovereign did not participate in that litigation and all of the Plaintiff's arguments were unrebutted by any opposing party.  *Davis v. Equatorial Guinea* is discussed in further detail below in Section VI.

> Several factors, however, tilt the balance decidedly in favor of Russian law. Defendant is an agency or instrumentality of the Russian government, and the subject matter of the alleged contract is Russian arms. Russia has an extremely strong interest in ensuring that its state-controlled agencies are not subjected to laws that may contravene its own, so as not to interfere with the Russian government's ability to continue to transact business with North American companies. The Court therefore finds that the government interest analysis favors the application of Russian law.

*Id* at 94.

This Court also applied the law of a foreign jurisdiction – Israel– in another suit against a sovereign in *Wachsman ex rel. Wachsman v. Islamic Republic of Iran*, 537 F. Supp. 2d 85 (D.D.C. 2008):

> In furtherance of these goals, the United States has a unique interest in applying its own law, rather than the unfamiliar law of a foreign nation, to determine liability involved in a state-sponsored terrorist attack on one of its citizens, particularly when such an attack is directed against its national interests.…  But with respect to wrongful death claims, Israel has a unique interest as well. *See Oveissi* [*v. Islamic Republic of Iran*]*,* 498 F.Supp.2d at 279 n. 6 (D.D.C.2007) (applying foreign law to the plaintiff's wrongful death claim because a foreign State has a "weighty" interest in compensating its residents for tortious harm). A wrongful death cause of action is "derivative in nature and thus coterminous with the decedent's rights." *Id.* (citing Restatement (Second) of Torts § 925 cmt. a (1971)).  Accordingly, the court applies the law of Israel to govern the plaintiffs' wrongful death claim.

*Id* at 95-96.

In the instant case, the United States has no unique interest in applying its own law to determine contract rights between an international law firm based in the United Kingdom and a foreign sovereign in Africa.  If SNR Denton wished to mandate the application of U.S. law applied in a U.S. court, it could have included such a requirement in the Retainer Agreement and obtained the consent of the foreign sovereign, but it failed to do so.  Therefore, a determination that Guinea has the most significant interest in the litigation leads to the application of Guinean

14

law and results in a determination that Guinea's statutory designation of forum in Guinea should

be respected by this Court.

**V.  Guinea Reserved Its Right To Present Factual Challenges in the Motion To Dismiss Until the Facial Challenges – such as "Choice of Law" Issues – are Resolved.**

As discussed above, the issue of waiver by Plaintiff Dentons US and the lack of waiver

by Guinea are initially facial challenges to the District Court's subject matter jurisdiction, as they

are controlled by the legal agreement attached to the Complaint.  Other issues preliminarily

raised in the Motion to Dismiss are factual challenges that were reserved by Guinea for further

analysis after factual development of the case. There is no doubt that a defendant asserting

foreign sovereign immunity "may make either a facial or factual challenge to the district court's

subject matter jurisdiction." *Terenkian v. Republic of Iraq,* 694 F.3d 1122, 1131 (9th

Cir.2012), *cert. denied,* 134 S.Ct. 64 (2013).  A facial challenge argues only that the facts as

alleged in the complaint are insufficient to state a claim. *Id.* A factual challenge disputes the truth

of the allegations that would otherwise be sufficient to invoke federal jurisdiction. *Id.*

The Defendants firmly believe that the contractual waiver by Dentons of bringing this

case in a United States District Court is a purely "facial challenge" to the District Court's subject

matter jurisdiction.  The matter can be resolved and the case can be dismissed by reference to the

allegations within the four corners of the Complaint, specifically including the exhibit attached to

the Complaint that provides the legal relationship between the parties.  However, as indicated in

the Defendants prior Brief, if the Court is not yet prepared to dismiss the case based on the four

corners of the Complaint, Defendants assert that factual development of the allegations upon

which Plaintiff bases its claim of jurisdiction should be allowed – through a "factual challenge."

Mem. in Supp. of Mot. to Dismiss 3.  Such development would allow the Defendants to submit

15

proof of the involvement of the Dentons UK practice, and to engage in a weighing of the facts involved in a true "choice of law" analysis. The choice of law analysis may determine the choice of forum. This Court will be ill-served if it accepts Plaintiff's summary and unsupported choice of law analysis only to learn after discovery that the Plaintiff's allegations are false and that the case should have been dismissed at this preliminary stage.

In particular, the questions surrounding "choice of law" issues are highly factual. The weight of authority is that FSIA provides no governing choice of law provision which means that the courts are left to rely on the Second Restatement of Conflicts. *See Schoenberg v. Exportadora Sal Sa Cv,* 930 F. 2d 777, 782 (9th Cir. 1991). The Second Restatement factors for the "more significant relationship" test include: the needs of the interstate and international systems; the relevant policies of the forum; the relevant policies of other interested states; the protection of justified expectations; the policies underlying a field of law; ideas on certainty, predictability, and uniformity of result; and ease in determination and application of applicable law. *Id.* at 783; *see also* Restatement (Second) of Conflicts § 6(2) (1971). As indicated in the Second Restatement of Conflict of Laws, the "choice of law" principles involve substantial factual development to weigh the pertinent factors. The "comments" to Subsection 6(2) spell out the level of factual complexity:

> . . . It is not suggested that this list of factors is exclusive. Undoubtedly, a court will on occasion give consideration to other factors in deciding a question of choice of law. Also it is not suggested that the factors mentioned are listed in the order of their relative importance. Varying weight will be given to a particular factor, or to a group of factors, in different areas of choice of law. . . . On the other hand, the policies in favor of protecting the justified expectations of the parties and of effectuating the basic policy underlying the particular field of law come to the fore in the rule that, subject to certain limitations, the parties can choose the law to govern their contract . . .
>
> At least some of the factors mentioned in this Subsection will point in different directions in all but the simplest case. Hence any rule of choice of law, like any

other common law rule, represents an accommodation of conflicting values. . . . [T]he difficulties and complexities involved have as yet prevented the courts from formulating a precise rule, or series of rules, which provide a satisfactory accommodation of the underlying factors in all of the situations which may arise. All that can presently be done in these areas is to state a general principle, such as application of the local law "of the state of most significant relationship," which provides some clue to the correct approach but does not furnish precise answers. In these areas, the courts must look in each case to the underlying factors themselves in order to arrive at a decision which will best accommodate them.

Statement of precise rules in many areas of choice of law is made even more difficult by the great variety of situations and of issues, by the fact that many of these situations and issues have not been thoroughly explored by the courts, by the generality of statement frequently used by the courts in their opinions, and by the new grounds of decision stated in many of the more recent opinions.

(*Id*., references omitted).

The choice of law analysis gives due regard for the needs of our international system of justice and the policies of those states most impacted by the litigation. The Restatement Comment indicates why this factual analysis is important:

*d. Needs of the interstate and international systems.* Probably the most important function of choice-of-law rules is to make the interstate and international systems work well. Choice-of-law rules, among other things, should seek to further harmonious relations between states and to facilitate commercial intercourse between them. In formulating rules of choice of law, a state should have regard for the needs and policies of other states and of the community of states. Rules of choice of law formulated with regard for such needs and policies are likely to commend themselves to other states and to be adopted by these states. Adoption of the same choice-of-law rules by many states will further the needs of the interstate and international systems and likewise the values of certainty, predictability and uniformity of result.

*f. Relevant policies of other interested states.* In determining a question of choice of law, the forum should give consideration not only to its own relevant policies (see Comment *e*) but also to the relevant policies of all other interested states. The forum should seek to reach a result that will achieve the best possible accommodation of these policies. The forum should also appraise the relative interests of the states involved in the determination of the particular issue. In general, it is fitting that the state whose interests are most deeply affected should have its local law applied. Which is the state of dominant interest may depend upon the issue involved. . . .

(*Id.*)  There can be no question that the policies of the state of Guinea are most impacted by litigation involving the sovereign nation of Guinea.

Lastly, the Court should examine the expectations of the parties as a key component of a choice of law analysis.  The Retainer Agreement spells out the expectations of the parties and provides no reason for Guinea to believe that it would be haled into a United States court, while Dentons was hired to advise Guinea on the legal requirements under the law of Guinea and would have a reasonable expectation that the law of Guinea would apply when no other law is specified in the Retainer Agreement:

> *g*. *Protection of justified expectations.* This is an important value in all fields of the law, including choice of law. Generally speaking, it would be unfair and improper to hold a person liable under the local law of one state when he had justifiably molded his conduct to conform to the requirements of another state. Also, it is in part because of this factor that the parties are free within broad limits to choose the law to govern the validity of their contract ….

Restatement (Second) of Conflicts § 6(2) (1971) (references omitted).

Although the Court may choose to dismiss the case based on the express waiver of United States court jurisdiction by Dentons, if this Court determines that the facial challenges to jurisdiction are insufficient to warrant dismissal at this time, the Court should allow the factual challenge to jurisdiction to proceed with further development of the facts of the dispute.

In addition, if the Court determines that the choice of forum determination depends on proof that an alternative court is available to effectively adjudicate the dispute, that issue is also dependent upon facts outside the four corners of the Complaint and will require additional factual development. *See* Section VII below.

18

**VI.      The FSIA Commercial Activity Exception is Misinterpreted By Dentons**

The largest section of Dentons US's Opposition Brief addresses the argument under FSIA § 1603  involving the "commercial activity" exception to sovereign immunity.  As discussed above, this argument is rendered moot if the Court determines that Dentons has waived its right to litigate in the United States and/or that Guinean law mandates that the plaintiff must sue in Guinea.  Nonetheless, Plaintiff Dentons US's argument misconstrues the commercial activity exception under FSIA because that section mandates that "[t]he commercial character of an activity shall be determined by reference to the nature of the course of conduct or particular transaction or act, rather than by reference to its purpose."  *Id*.

Dentons US misinterprets this clause by asserting that the "transaction or act" is "entering into a commercial contract for legal services – just as *Dentons* would with a private party." Mem. in Opp'n to Def. Mot. to Dismiss 11 (emphasis added.)  The focus, however, must not be on Dentons' actions, but on the actions of the sovereign nation.  The cases cited by Dentons US make clear that it is the sovereign's acts that determine qualification for the commercial activity exception.  In *Lanny J. Davis & Assocs*. *LLC* the Court held that FSIA focuses on the acts of the sovereign in determining jurisdiction and not the Plaintiff's actions.  962 F. Supp 2d 152.

Here, Guinea was not acting as a "private player" when it sought counsel as a sovereign nation concerning exclusively governmental matters.  This is not a "commercial activity under FSIA" Mem. in Supp. of Mot. to Dismiss 11.  The core of representation was to advise a foreign government on how to exercise sovereign authority over national assets.  *Id*. at 12.

Although it may be true that some cases have held that "a foreign sovereign acts in the manner of a private player when it retains a law firm to provide counsel," these holdings do not mean that a foreign sovereign is *always* acting as a private player in any dealings with law firms.

19

*Id.*  Since there are many ways that a law firm can work with a foreign sovereign, the specific facts of the representation need to be examined to determine if the actions of the sovereign fall into the zone of commercial activity.  Law firms undertake many sorts of activities that do not constitute commercial activity, including pro bono work.[5]   Indeed the actions required by the Ministry under the Retainer Agreement were not commercial actions, but rather were limited to the non-commercial and purely governmental function "to secure funding for this representation, either through the Ministry's budget or through external funding." Retainer Agreement, Compl. Exs. 3-4 at 4.  Guinea was to use its status as sovereign to carry out its obligations under the Retainer Agreement.  The actions of the law firm are not determinative to the analysis under FSIA.

As discussed in the Defendants' prior Brief, the core nature of the contract was unique to a sovereign nation and not commercial.  Mem. in Supp. of Mot. to Dismiss.  The project involved high level strategic advice to aid a sovereign nation in (i) international diplomacy; (ii) infrastructure development;  (3) raising revenue for government operations, and the actions were taken with the understanding that Guinea was unable to pay for the services.

Dentons US cites the Supreme Court's decision in *Republic of Argentina v. Weltover, Inc.*, 504 U.S. 607 (1992).  But *Weltover* requires the Court to engage in an examination of the nature of the contract and the location of the sovereign's acts ("Because New York was . . . the place of performance for Argentina's ultimate contractual obligations....Money that was supposed to have been delivered to a New York bank for deposit was not forthcoming.") *Id.* at 619.  Dentons US asserts that Guinea made a payment to a US bank account pursuant to the

---

[5] Law firms and non-profit legal organizations routinely distinguish between their "commercial activities" and their pro bono work.  *See  e.g.*, Pro Bono Institute, http://www.probonoinst.org/wpps/wp-content/uploads/law_firm_challenge_commentary.pdf.

Retainer Agreement, but the location of the payment was not a contractual obligation and was not required by the Retainer Agreement, as Dentons also requested payment for a French account, as well as a U.S. account.  The serendipitous choice of payment to the U.S. account is too thin of a reed to support U.S. jurisdiction – as the location for payment was not a contractual obligation, but a shifting request by Plaintiff's accounting department.

In addition, the Court should determine if the sovereign was acting pursuant to a commercial contract or an agreement more akin to a pro bono – non-commercial – agreement. In its Opposition Brief, Plaintiff Dentons US did not rebut the position that the Retainer Agreement was highly unusual and recognized Guinea's inability to pay as a commercial client of the firm. Even without any additional discovery as to the nature of the expectations between the parties, it is clear from the language in the Retainer Agreement that the sovereign was not binding itself to pay a commercial contract, but was functioning as a non-commercial, sovereign client with an expectation that the lawyers providing the advice would find their own source of funding.  No action taken by Guinea can be construed as a "commercial act."

Therefore, even if Dentons US had not already waived its right to sue in a United States court, the commercial exception to sovereign immunity would not provide the basis for this Court to exercise jurisdiction in this case.

**VII.    Plaintiff's Arguments on *Forum Non Conveniens* Should be Rejected.**

Dentons US makes the nonsensical argument that jurisdiction should remain in the United States because "only a court of the United States (or one of them) may attach commercial property of a foreign nation located in the United States." Mem. in Opp'n to Def. Mot. to Dismiss 30 (citing *TMR Energy Ltd. v. State Prop Fund of Ukraine*, 411 F 3d 296, 303 (D.C. Cir. 2005)).  The argument is nonsensical in the context of *this case* because a United States court

21

lacks the power to attach property of a sovereign nation located outside of the U.S. and there has been no showing, or even an allegation, that any attachable property of Guinea is located in the United States. Any collection action is likely to require the involvement of a foreign jurisdiction where Guinean assets are located, *e.g.*, within the Republic of Guinea.

In addition, Dentons US argues that Defendants have not met their burden of demonstrating an available alternative forum. The Court should note that Dentons US does not argue that there are not adequate alternative forums, only that Guinea has not met its burden of showing the adequacy of such alternative forums. However, the cases cited by Dentons US note that such a burden is satisfied outside of the four corners of the Complaint and after a period of "jurisdictional discovery." *See Agudas Chasidei Chabad of U.S. v. Russian Federation*, 466 F. Supp. 2d 6, 27-28 (D.D.C. 2006).

> At oral argument, the parties failed to shed more light on the adequacy of Russian courts to hear this dispute or on the effect of the 1992 legislation on this question. See id. at 678 ("[I]f the foreign forum would deny [the plaintiff] access to its judicial system on the claims in his complaint, dismissal on forum non conveniens grounds is inappropriate."). *Having conducted jurisdictional discovery and presented their oral arguments, the defendants had ample opportunity to make a showing of the existence of an adequate alternate forum.* However, the defendants' conclusory statements about adequacy of a Russian forum fall short of the required showing for forum non conveniens.

*Id.* (emphasis added).

Dentons US cannot make the assertion that no adequate foreign forum is available to resolve the dispute, when its own Retainer Agreement attested to the adequacy of two alternative forums – the courts of England and the London Court of International Arbitration. [Retainer Agreement, United Kingdom Location Terms of Business p. 20- 22, Compl. Exs. 3 at 30-32, 4 at 27-29.] But if Dentons US wishes to advance this burden of proof argument with respect to the *forum non conveniens* issue, that argument starts a process of "jurisdictional

discovery" allowing Guinea "ample opportunity to make a showing of the existence of an adequate forum." *Russian Federation*, 466 F. Supp. 2d at 27-28.

It should come as no surprise to the international law firm of SNR Dentons that the Republic of Guinea has a functioning legal system derived from French law, much the same as the law of the United States is derived from the English common law.  The judicial system is based on French civil law, customary law, and decree.  In 1958 and 1965, the government introduced some customary law, but retained French law as the basic framework for the court system.[6]

> The Constitution provides for the judicial authority as independent of the executive authority and legislative authority.  According to the Constitution judicial authority shall be exercised exclusively by the courts and tribunals. The judiciary includes courts of first instance, the two Courts of Appeal, and the Supreme Court, which is the court of final appeal.  The Penal Code provides for the presumption of innocence of accused persons, the independence of judges, the equality of citizens before the law, the right of the accused to counsel, and the right to appeal a judicial decision.

*Republic of Guinea Country Profile*, United Nations Department of Economic and Social Affairs (2004).

The Republic of Guinea stands ready to supply additional information and details about the adequacy of its judicial system if Dentons US wishes to engage in jurisdictional discovery on this issue.

---

[6] For further background on the Guinean legal system, *see* the Library of Congress Guide to Law of Guinea, available online at http://www.loc.gov/law/help/guide/nations/guinea.php.

HEARING REQUESTED

Defendants request a hearing to address the issues raised by the Motion to Dismiss.

December 29, 2014 Respectfully submitted,

    s/ David H. Dickieson
David H. Dickieson (DC Bar No. 321778)
Robert Spagnoletti (DC Bar No. 446462)
SCHERTLER & ONORATO, LLP
575 – 7th Street, N.W.
Suite 300 South
Washington, DC 20004
Telephone:  (202) 824-1222
Facsimile: (202) 628-4177
Email:  ddickieson@schertlerlaw.com
           bspagnoletti@schertlerlaw.com

CERTIFICATE OF SERVICE

On this 29th day of December, 2014, the foregoing pleading was served on opposing counsel, below, via ECF:

Michael S. Sundermeyer (D.C. Bar No. 931873)
Ana C. Reyes (D.C. Bar No. 477354)
Leslie C. Mahaffey (D.C. Bar No. 1019782)
Williams & Connolly LLP
725 12th Street, NW
Washington, D.C. 20005
Telephone:  (202) 434-5000
Facsimile: (202) 434-5029
Email:  msundermeyer@wc.com
        areyes@wc.com
        lmahaffey@wc.com
*Attorneys for Plaintiff Dentons US LLP*

                                   /s/  David Dickieson

25