UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DENTONS US LLP, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>THE REPUBLIC OF GUINEA, and )<br>)<br>THE MINISTRY OF MINES AND )<br>GEOLOGY, )<br>)<br>Defendants. )<br>) | Case No 1:14-cv-01312-RDM |

## MEMORANDUM OPINION

On August 1, 2014, plaintiff Dentons US LLP (f/k/a SNR Denton US LLP) ("plaintiff") filed a complaint against defendants The Republic of Guinea and The Ministry of Mines and Geology, The Republic of Guinea ("defendants") alleging jurisdiction pursuant to 28 U.S.C. §§ 1330(a) and § 1605(a)(2) and damages of $10,214,458.48 under alternative theories of breach of contract, quantum meruit, unjust enrichment, and account stated damages as well as pre- and post-judgment interest, fees and expenses for legal services provided to defendants in 2012-2013. Compl., ECF No. 1. Defendants entered a special appearance to file a Motion to Dismiss. ECF No. 15. Plaintiff entered a Memorandum in Opposition and defendant filed a reply. ECF Nos. 18 and 20. The court will DENY defendants' motion to dismiss.

### I. BACKGROUND

Defendants entered into an agreement with plaintiff for legal services in connection with a large-scale mining and infrastructure project ("the Simandou Project"). Compl., ECF No. 1. The

agreement appears to have been initiated in August, 2012 and a retainer agreement, dated December 24, 2012 appears to have been reached by the parties. *Id.* In connection with the Simandou Project, plaintiff submitted invoices to defendants totaling $12,214,458.48. *Id.* at 15. Defendants made a partial payment of $2,000,000.00 on or about April 1, 2013. *Id.* at 12. Plaintiff alleges defendants made representations that it agreed with and would pay the invoiced amount up until September 2013. *Id.* at 14.

## II.   ANALYSIS

Now before the Court is defendants' motion to dismiss for lack of jurisdiction, as well as the grounds of *forum non coveniens*, and allege that plaintiff waived its right to its claims in the retainer agreement between the parties. Mot. Dismiss, ECF No. 15. Plaintiff counters that "[t]his is a straightforward breach of a commercial contract, for which defendants…are liable because they failed to pay $10,214,458.48 in legal fees and costs." Mem. Opp'n. Mot. Dismiss, ECF No. 18 at 5. After carefully considering each of defendants' claims, defendants' motion to dismiss is DENIED.

### a.   Standards of Review

Federal Rule of Civil Procedure 12(b)(1) delineates the defense of lack of subject-matter jurisdiction. Further, "it is a well-established principle that jurisdiction of the subject matter is an absolute prerequisite for the continuance of an action in the District Court and in the absence of the same the Court must dismiss the action." *Trinanes v. Schulte*, 311 F. Supp. 812 (S.D.N.Y. 1970) citing *Amundson v. United States*, 279 F .Supp. 779 (S.D.N.Y. 1967); Fed. R. Civ. P. 12(h)(3). Moreover, "[t]he standard of review for a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction depends upon the purpose of the motion." *Pitney*

*Bowes, Inc. v. U.S. Postal Service*, 27 F. Supp .2d 15, 19 (D.D.C. 1998) (citing *Freiburger v. Emery Air Charter, Inc.*, 795 F.Supp. 253, 256 (N.D. Ill. 1992; 5A Wright & Miller, Federal Practice & Procedure: Civil 2d § 1361 at 456 (2d ed. 1990). As defendants note, "[w]here the motion to dismiss is based on a claim of foreign sovereign immunity…the court must engage in sufficient pretrial factual and legal determinations to satisfy itself of its authority to hear the case…" Mot. Dismiss, ECF No. 15-1 citing *Burnett v. Al Baraka Inv. & Dev. Corp.*, 292 F. Supp. 2d 9, 14 (D.D.C. 2003) (citations omitted). Thus, the Court examines subject matter jurisdiction with more scrutiny than in non-FSIA cases.

### b. Whether Defendants Enjoy Immunity from Suit under the Foreign Sovereign Immunities Act

First, defendants argue that they are entitled to immunity under the Foreign Sovereign Immunities Act ("FSIA), 28 U.S.C. §§ 1602-1611. Defendants argue that "the scope of the [plaintiff]'s work was to counsel a foreign sovereign about the financing and development of sovereign assets and national infrastructure located entirely within the boundaries of the foreign country." Mem. Supp. Mot. Dismiss, ECF No. 15-1 at 2. Pursuant to the FSIA, "a foreign state is presumptively immune from the jurisdiction of United States courts; unless a specified exception applies…" *Saudi Arabia v. Nelson*, 507 U.S. 349, 355 (1993) citing *Verlinden B.V. v. Central Bank of Nigeria*, 461 U.S. 480, 488 (1983)[1]. As the parties agree that defendant Guinea is a foreign state and that defendant Ministry is a political subdivision thereof, the Court finds that defendants are a "foreign state" as defined under FSIA. Compl., ECF No. 1; Mem. Supp. Mot. Dismiss, ECF No. 15-1; Mem. Opp'n. Mot. Dismiss, ECF No. 18; 28 U.S.C. § 1603 (2005). As such, defendants are entitled immunity under FSIA unless an exception applies. The Court now

---

[1] The Court examines whether such an exception applies below.

3

turns to that analysis, noting that there are two possible exceptions that may apply herein; waiver under § 1605(a)(1) or that related to commercial activity under § 1605(a)(2).

### c. Waiver of Immunity Under § 1605(a)(1)

The FSIA provides that "a foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case…in which the foreign state has waived its immunity either explicitly or by implication…" §§ 1605(a)-(a)(1). Defendants allege that there was no such explicit waiver and as such, this exception to immunity does not apply. Mem. Supp. Mot. Dismiss, ECF No. 15-1 at 5. To support this proposition, defendant alleges that plaintiff agreed to secure funding if defendant was unable, that the parties contemplated an out of court dispute resolution process, that the Retainer Agreement failed to designate law to govern any disputes, and that plaintiff's terms of business[2] generally avoid jurisdiction in U.S. Courts. Mem. Supp. Mot. Dismiss, ECF No 15-1 at 6-9. The Court addresses relevant portions of these arguments more specifically below, but notes that none of these arguments address explicitly the presence or absence of waiver. Defendants further suggest that plaintiff conflates "'waiver' and 'commercial activity'" under the FSIA. ECF No. 15-1 at 10. The Court sees no evidence of an explicit or implied waiver of sovereign immunity under § 1605(a)(1) and turns to the "commercial activity" exception under § 1605(a)(2).

### d. The Commercial Activity Exception to Immunity Under § 1605(a)(2)

Plaintiff cogently argues that there is an exception to immunity based upon defendants' commercial activities. Compl., ECF No. 1. Section 1605(a)(2) of the FSIA provides that:

> a foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case…in which the action is based upon a commercial activity carried on in the United States by the foreign state; or upon an act performed in the United States in connection with commercial activity of the foreign state elsewhere; or upon an act outside the territory of the United States in

---

[2] Attached to the Retainer Agreement and incorporated by reference. Exhibit 4 of ECF No. 1.

connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States...

Further, "commercial activity" is defined in § 1603(d) and (e) as:

> (d)...either a regular course of commercial conduct or a particular commercial transaction or act. The commercial character of an activity shall be determined by reference to the nature of the course of conduct or particular transaction or act, rather than by reference to its purpose.
>
> (e) A "commercial activity carried on in the United States by a foreign state" means commercial activity carried on by such state and having substantial contact with the United States.

The Supreme Court has explained the required analysis, stating:

> ...the question is not whether the foreign government is acting with a profit motive or instead with the aim of fulfilling uniquely sovereign objectives. Rather, the issue is whether the particular actions that the foreign state performs (whatever the motive behind them) are the *type* of actions by which a private party engages in 'trade and commerce,' Black's Law Dictionary 270 (6th Ed. 1990)...

*Republic of Argentina v. Weltover, Inc.*, 504 U.S. 607, 614 (1992) (citations omitted). Whether the activities at issue in this case should be considered commercial activity depends upon how to fundamentally characterize the transactions. If, as defendants argue, the activity can be characterized as "[t]he core of the representation was thus to advise a foreign government on how to exercise its sovereign authority over national assets," which is of a nature that cannot be undertaken by private parties, then defendants must prevail and this exception cannot apply. Mem. Supp. Mot. Dismiss, ECF No. 15-1 at 12. If, conversely, the Court characterizes such activity as an entity (defendants) contracting for legal services related to a development, infrastructure and construction project, and thus as a commercial activity in which private parties regularly engage, the exception applies and defendants' motion must be denied. Defendants argue that the Simandou Project involves "three classic functions of government – (i) international diplomacy, (ii) infrastructure development, and (iii) raising revenue for government operations." *Id.* at 13. The

Court is not satisfied, however, with such characterization of the activities at issue. As noted by plaintiff, defendants stand on shaky ground in so asserting. Specifically, defendants point to *Best Medical Belgium, Inc. v. Kingdom of Belgium*, 913 F. Supp. 2d 230 (E.D. Va. 2012) for the proposition that "promoting commerce and awarding government subsidies 'are not...commercial activit[ies] available to private parties.'" Mot. Dismiss, ECF No. 15-1 at 12. By simply inserting some form of the word government throughout its argument, defendants hope to obfuscate the *Weltover* analysis and convince the court that the object of the agreement between the parties was explicitly governmental. Mot. Dismiss, ECF No. 15-1 at 13. The Court does not agree with defendants' analysis. Private parties are certainly free to contract for legal services in support of funding and developing a mine, even if such funding and development specifically contemplates the possibility of international financing. Rather, plaintiff asserts, and the Court agrees, that "contract for the provision of legal services constitutes 'commercial activity' under section 1605(a)(2)," *Lanny J. Davis & Assocs. LLC v. Republic of Equatorial Guinea*, 962 F. Supp .2d 152, 159 (D.D.C. 2013) (citations omitted); Mem. Opp'n. Mot. Dismiss, ECF No 18 at 11. The Court ultimately sees nothing in the nature of the Simandou Project that is other than of "the *type* of actions by which a private party engages in 'trade and commerce,' Black's Law Dictionary 270 (6th Ed. 1990)..." *Republic of Argentina v. Weltover, Inc.*, 504 U.S. 607, 614 (1992) (citations omitted).

Defendants further argue that actions by defendant must have a "significant direct effect in the United States," for the commercial activity exception to apply. Mem. Supp. Mot. Dismiss, ECF No. 15-1 at 14. Plaintiff stipulates that this is the standard as the commercial activity at issue herein falls into the third category of possible acts under § 1605(a)(2). Mem. Supp. Mot. Dismiss, ECF No. 15-1 at 14; Mem. Opp'n. Mot. Dismiss, ECF No. 18 at 10. Plaintiff argues that

"[f]ollowing *Weltover*, the D.C. Circuit's direct effect cases involving alleged breaches of contract have turned on whether the contract in question established the United States as a place of performance." Mem. Opp'n. Mot. Dismiss, ECF No. 18 at 17. Applying this precedent, the Court finds that the activities involved in the instant case include performance of services in the district as well as payment to be made to plaintiff's U.S. bank, therefore establishing sufficient direct effect to maintain jurisdiction.

### e. Structure of Fees and Funding

Defendants further assert that plaintiff undertook representation "knowing that the Ministry and Guinea lacked the funds to pay for the Firm's legal services and with the express intention of seeking compensation from other parties..." Mem. Supp. Mot. Dismiss, ECF No. 15-1 at 16. Defendants make much of their claim that plaintiff agreed to secure funding for plaintiff's services. This claim is both inconsistent with the language of the Retainer Agreement on its face and illogical in the context of the instant case. The language of the retainer agreement between the parties appears clear as to payment of fees in that defendants "will implement in good faith all efforts necessary to secure funding for this representation..." Ex. 4 of Compl., ECF No. 1 at 4. Defendants further point to provisions regarding deferral of collection and allowing plaintiff to affirmatively seek alternate funding to bolster their claim that no fees or costs are owed. Mem. Supp. Mot. Dismiss, ECF No. 15-1 at 17. The Court finds it cannot interpret such language to indicate that the parties agreed for defendants to pay plaintiff if convenient, but otherwise expect plaintiff to pay themselves, as defendants suggest. Such argument is squarely rejected.

### f. *forum non conveniens*

Next, defendants argue that the Court should decline jurisdiction on the grounds of *forum non conveniens*. Mem. Supp. Mot. Dismiss, ECF No. 15-1 at 18. In support of this contention,

defendants argue that "it would be presumptuous to have a U.S. court dictate terms to a foreign sovereign in a circumstance where the foreign sovereign has not agreed to the jurisdiction of the U.S. court..." *Id.* at 19. The Court disagrees that whether defendants agree to the jurisdiction of the Court has any relevance, and the court declines to exercise its discretion to grant such relief.

### g. Plaintiff is a United States Entity

Defendants argue, at length throughout their motion, that plaintiff is an international organization, which should deprive the court of jurisdiction. Mem. Supp. Mot. Dismiss, ECF No. 15-1. Conversely, plaintiff describes itself as a "distinct U.S. legal entity." Mem. Opp'n. Mot. Dismiss, ECF No. 18. Defendants have offered no sufficient or competent evidence to rebut plaintiff's assertion, therefore the Court finds no relief appropriate on these grounds, nor does the court further analyze defendants' claims contingent upon its assertion that plaintiff is an international law firm. In fact, the retainer agreement letter itself states that it "confirms the agreement of the Minister of Mines and Geology of the Republic of Guinea (the "Ministry" or "Client") to engage the firm SNR Denton US LLP and its affiliates (the "firm") to provide services..." Exhibit 4 of Compl., ECF No 1-4 at 1.

### III. CONCLUSION

In light of the Court's analysis, defendants' motion to dismiss will be DENIED in a separate Order issued this date.

Signed by Royce C. Lamberth, Judge, on September 22, 2015.