**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

**DENTONS US LLP,**

    *Plaintiff*,

    v.

**THE REPUBLIC OF GUINEA et al.,**

    *Defendants.*

_____

**THE REPUBLIC OF GUINEA et al.,**

    *Counterclaim and Third Party Plaintiff*s,

    v.

**DENTONS US LLP et al.,**

    *Counterclaim and Third Party
    Defendants.*

**Case No. 1:14-cv-1312-RDM**

**THE REPUBLIC OF GUINEA'S OPPOSITION TO DENTONS US LLP'S
PARTIAL MOTION TO DISMISS AND MOTION TO STRIKE**

    Counterclaim Plaintiffs, the Republic of Guinea and its Ministry of Mines and Geology (collectively referred to herein as "Guinea"), hereby oppose Dentons US LLP's ("Dentons US") Partial Motion to Dismiss and Motion to Strike.  Guinea is simultaneously filing an Opposition Brief to the Motion to Dismiss filed by the Third Party Defendants that relies on, and incorporates many of the arguments and authorities cited herein.

I.       **BACKGROUND**

To place this dispute in context, it is useful to review briefly the general circumstances

leading to the dispute and the pending Motion to Dismiss.

Guinea has battled poverty and struggled with a lack of government resources since it

was first formed as an independent nation in 1958.   In the mid-1990s, exploratory work was

performed which generated substantial interest in a mineral-rich remote area of Guinea known as

Simandou.   The World Bank assisted Guinea in investigating the possibility of developing a

mining operation at Simandou, efforts which led to the formation of a partnership (the

"Simandou partnership") to lead the project.   The partnership and the mine's operating company,

Simfer S.A., worked with Guinea with the understanding that Guinea's participation would

provide it with a "no cost" stake in the project until sufficient funds were generated from the

project to allow Guinea to begin to contribute. The participation of the Guinean government

could eventually reach 35%, comprising a 15% no cost stake and a 20% contributing stake in the

mine.   Such development remains far off in the future.   The Simandou partners agreed to

outsource the development to a consortium that would fund, build, and own the rail and port

infrastructure.   Ownership would transfer to Guinea after thirty years.

In early 2012, the global law firm SNR Denton, including Dentons US, worked with the

World Bank to assess Guinea's need for legal advisory services relating to the development of

the Simandou project.   *See, e.g.*, Compl. ¶¶ 22-23   SNR Denton, having participated in the

assessment of Guinea's legal needs, and fully aware of Guinea's interest in developing the

Simandou natural resources, actively courted Guinea and offered to serve as the country's legal

advisor.  Compl. ¶¶ 24-25.

The following facts are taken directly from Guinea's Counterclaim and must be deemed true for purposes of evaluating the Motion to Dismiss.

In May, 2012,  SNR Denton began working for Guinea directly in the role of Legal Advisor to the Ministry and to the government of the Republic of Guinea.  Compl. Ex. 4 at 1. That attorney-client relationship was memorialized several months later in a Letter of Appointment dated August 25, 2012, and then formalized in a Retainer Agreement dated December 24, 2012 which was signed by both parties on December 27, 2012.[1]  Compl. Exs. 1-5.

At the time SNR Denton formalized an attorney-client relationship with Guinea, SNR Denton was fully aware that Guinea suffered from a lack of resources, including insufficient funds to pay SNR Denton directly for its expected legal fees. Countercl. ¶ 41. Indeed, the Retainer Agreement provided that SNR Denton "understands that neither the ministry nor the Government of the Republic of Guinea currently have the necessary funds to pay for the costs and fees of representation." Countercl. ¶ 41 (citing Compl. ¶ 16, Exs. 3-4).  Guinea was advised by SNR Denton and fully expected that SNR Denton's legal fees would eventually come from a third-party source with an interest in the Simandou project.  See, e.g., Countercl. ¶ 59(c).  The Retainer Agreement made that expectation explicit: Guinea authorized "the Firm to seek, with third parties, various options for the financing of its representation and to present these options in the form of a written proposal to the Ministry for its consideration." Compl. Ex. 4 at 3.  Given Guinea's lack of resources and inability to pay for legal services, it was SNR Denton's promise

---

[1]  Guinea incorporated the Retainer Agreement and its Terms of Business by reference in the Counterclaim. *See e.g.*, Countercl. ¶ 19.  Thus, this Court must consider the representations and facts in the Retainer Agreement and the Terms of Business as part and parcel of the Counterclaim for measuring the adequacy of the allegations of the Counterclaim, as stated in the authority cited by Dentons US, *See EEOC v. St. Francis Xavier Parochial School,* 117 F.3d 621, 624 (D.C.Cir.1997) (allowing the consideration of documents either attached to or incorporated in the counterclaim, and matters of which the Court may take judicial notice).

of third-party payment that persuaded Guinea to enter into a legal services agreement with SNR Denton.

SNR Denton repudiated its promise that it would rely on third-party funding after running up a $12 million legal bill. Having made no progress to secure funding from an interested third-party source, SNR Denton demanded a $2 million advance payment from Guinea. Countercl. ¶¶ 23-24. When Guinea proved unable and unwilling to pay the inflated legal bills, Dentons US violated the agreement with Guinea by bringing this lawsuit, Countercl. ¶ 74, now claiming that it was "objectively unreasonable" for Guinea to rely on SNR Denton's express representation that it would forego collecting from Guinea directly. Mem. in Supp. of Denton US's Partial. Mot. to Dismiss at 9. It is this fraudulent inducement and repudiation that forms the basis of Count III of Guinea's Counterclaim.

Dentons US has moved the Court to dismiss Count III, alleging that Guinea failed to plead adequately that: (1) Dentons US had knowledge of the false statements that induced Guinea to enter into the Retainer Agreement; (2) Dentons US acted with the intent to deceive Guinea; and (3) Guinea reasonably relied on Dentons US's representations. *Id*. Dentons US further argues that Count IV, which alleges a breach of the Retainer Agreement, should be dismissed because it is improperly captioned "Injunctive Relief," and that any reference to Guinea's Ebola crisis be struck from the Counterclaim.[2] *Id*. As discussed below, none of these claims has merit and none justifies dismissing any counts or specific language at this early stage in the litigation.

---

[2] Dentons US did not move to dismiss Count I (Breach of Contract) or Count II (Breach of Fiduciary Duty) of Guinea's Counterclaim.

## II.   DISCUSSION

### A.   STANDARD OF REVIEW

In considering a motion to dismiss a defendant's counterclaim brought under Fed. R. Civ.

Pro. 12(b)(6), the Court applies the now-familiar standard used to review all motions for failure

to state a claim.   In reviewing such a motion, the Court considers only the facts alleged in the

defendants' counterclaim, any documents either attached to or incorporated in the counterclaim,

and matters of which the Court may take judicial notice. [3]   *Wiggins v. Philip Morris, Inc.*, 853 F.

Supp. 457, 457-58 (D.D.C. 1994) citing *EEOC v. St. Francis Xavier Parochial School,* 117 F.3d

621, 624 (D.C. Cir. 1997).   Defendants' factual allegations in the counterclaim must be presumed

true and liberally construed in the defendants' favor.   *Phillips v. Bureau of Prisons,* 591 F.2d

966, 968 (D.C. Cir. 1979) (citing *Miree v. DeKalb County,* 433 U.S. 25, 27 n. 2, 97 S. Ct. 2490

(1977))  Dismissal is appropriate only if it appears beyond doubt that no set of facts proffered in

support of defendants' counterclaim would entitle them to relief.   *Wiggins, supra*, 853 F. Supp. at

457-58.   A counterclaim plaintiff need not "match facts to every element of a legal theory," and a

motion under Rule 12(b)(6) should be denied if the allegations are "sufficiently factual" and the

claim "plausibly give[s] rise to an entitlement of relief."   *Bell Atl. Corp. v. Twombly*, 550 U.S.

544, 555-56 (2007).

### B.   COUNT III, FRAUD IN THE INDUCEMENT, IS PROPERLY PLED.

In its Partial Motion to Dismiss Count III, Dentons US erroneously alleges that Guinea

failed to plead three required elements of fraud in the inducement: (1) Dentons US's knowledge

---

[3]  The SNR Denton Location Terms of Business presents a contradictory picture of what the governing law should be in this dispute.  One might conclude from a review of the Terms of Business that the Paris office bills are governed by French law, the London office bills are governed by British law and the Washington Office bills are left without any defined governing law.  The choice of law issue will need to be addressed later in the case, but it should be noted that Guinea does not waive its position that Guinean law governs the entire relationship.  See pages 8 and 9 of the Memorandum in Support of Guinea's Motion to Dismiss. However, Guinea will typically provide citations from the law of the forum, the District of Columbia, without waiving any argument that other laws may ultimately be controlling.

that the statements it made were false; (2) Dentons US's intent to deceive; and (3) Guinea's reasonable reliance on Dentons US's false statements.  Dentons US Mem. at 7-13.  In fact, Guinea is not required to allege or prove the first [two] element[s], and properly plead the [second and] third.

In general, to state a claim for fraud in the inducement, a party must plausibly allege:  (1) a false representation, (2) in reference to a material fact, (3) made with knowledge of its falsity, (4) with the intent to deceive, and (5) action taken ... in reliance upon the representation. . . . " *Wetzel v. Capital City Real Estate, LLC*, 73 A.3d 1000, 1002–03 (D.C. 2013) (quoting *Kumar v. District of Columbia Water & Sewer Auth.*, 25 A.3d 9, 15 (D.C. 2011).  In cases involving commercial contracts negotiated at arm's length, there is the further requirement that the defrauded party's reliance be reasonable.  *Drake v. McNair*, 993 A.2d 607, 622 (D.C. 2010) (quoting *Hercules & Co. v. Shama Restaurant Corp.,* 613 A.2d 916, 923 (D.C.1992)).

A different pleading requirement applies, however, when the parties to a contract have a fiduciary relationship.  When a claim of fraud is directed against a fiduciary, as it is here, it includes some of the same elements as actual fraud, but not the scienter elements of dishonesty or intent to deceive.  *See De May v. Moore & Bruce, L.L.P.,* 584 F. Supp. 2d 170, 185 (D.D.C. 2008) (citing *Rick v. United States,* 161 F.2d 897, 899 (D.C. 1947) ("neither actual dishonesty nor intent to deceive is the essential element [of fraud in a fiduciary setting – i.e., constructive fraud]).  This lesser pleading requirement is triggered by the confidential or fiduciary relationship between the parties, "by which the defendant is able to exercise extraordinary influence over plaintiff."  *Cordoba Initiative Corp. v. Deak*, 900 F. Supp. 2d 42, 50 (D.D.C.

2012) quoting *McWilliams Ballard, Inc. v. Broadway Management Co,, Inc.,* 636 F. Supp. 2d 1, 6 n. 7 (internal quotation marks omitted).[4]

Using the same rationale, courts have also held that a plaintiff claiming constructive fraud by a fiduciary need not allege that the fiduciary had actual knowledge of the falsity of the statements. *See, e.g.*, *Executive Management Ltd. v. Ticor Title Ins. Co*., 963 P.2d 465 (1998) ("Constructive fraud is the breach of some legal or equitable duty which, irrespective of moral guilt, the law declares fraudulent because of its tendency to deceive others or to violate confidence.") quoting *Long v. Towne,* 98 Nev. 11, 13, 639 P.2d 528, 529-30 (1982).

SNR Denton's fiduciary relationship with Guinea dates back to at least May, 2012, when it began providing Guinea with legal advice on the development of the Simandou project. Although the Letter of Appointment was not executed until August, 2012, followed by the Retainer Agreement in December, 2012, both documents acknowledge that SNR Denton undertook the representation of Guinea as early as May. [Comp. Ex. 4 at 1.]  Once that attorney-client relationship was formed, SNR Denton became a fiduciary in relation to Guinea and its Ministry of Mines and Geology.[5]  As a fiduciary, SNR Denton had a higher responsibility to ensure that it did not mislead, misrepresent or omit critical facts when advising, or entering into agreements with, its client Guinea.

Guinea asserts in its Counterclaim that that is what, in fact, happened.  That is, SNR Denton made material, false statements about its plan to recover attorney fees from a third party to induce Guinea into entering into the Retainer Agreement. The Retainer Agreement recited

---

[4]  A confidential or fiduciary relationship exists in all cases where there has been a special confidence reposed in those who, in equity or good conscience, are bound to act in good faith and with due regard to the interests of one reposing confidence. Constructive fraud differs from actual fraud in the intent to deceive, or scienter, is not an element, but is presumed to exist. *See Link v. Link*, 278 N.C. 181, 179 S.E.2d 697 (1971).

[5]  Dentons US has not challenged Guinea's assertion that Dentons US had a fiduciary relationship with Guinea and its Ministry of Mines and Geology.  Nor has Dentons US moved to dismiss Count II of Guinea's counterclaim, alleging a breach of its fiduciary duty.

those representations. For the reasons discussed above, since SNR Denton was a fiduciary, Guinea need not allege or prove the scienter elements that SNR Denton intended to deceive or had knowledge that the specific statements were false in Guinea's claim for fraud in the inducement.  On this basis alone, Dentons US's Motion to Dismiss Count III should be denied.

However, even if Guinea was required to allege Dentons US's intent to deceive or knowledge of the falsity of its statements, the allegations plead in the Counterclaim (in conjunction with the documents referenced in the Complaint and Counterclaim) are more than sufficient to meet the 'particularity' standard of Rule 9(b):[6]

- SNR Denton's Retainer Agreement acknowledged Guinea's "urgent need" for "accelerated legal services" and that SNR Denton "understands that neither the ministry nor the Government of the Republic of Guinea currently have [sic] the necessary funds to pay for the costs and fees of representation."  Countercl. ¶ 41; Compl. ¶ 16, Exs. 3-4.

- SNR Denton represented in the Retainer Agreement that it knew that Guinea could not afford to pay for its services, but that Guinea could rely on SNR Denton's expertise in securing payment from external sources.  Countercl. ¶ 59 (b); Compl. Ex. 4 at 4.  SNR Denton specifically promised that it would "present these [financing] options in the form of a written proposal to the Ministry for its consideration." *Id.*

- SNR Denton acknowledged in the December 24, 2012 Engagement Letter that SNR Denton had been actively working on behalf of Guinea since May 2, 2012 – long enough to know Guinea's financial status and the likelihood of securing  third-party funding. The Retainer Agreement referenced in the Counterclaim recites that SNR Denton continues the work by the "Firm" from May 2, 2012 to the date of the December 24, 2012 Retainer Agreement [Compl. Ex. 4.]

- SNR Denton buried in its Retainer Agreement boilerplate Terms of Business which purport to undermine the explicit promise made by SNR Denton to secure and rely on third-party funding for its legal fees.  Specifically, hidden in the Business Terms attached to the Retainer Agreement, is the following provision:  "Where you expect a third party to reimburse you for our fees, costs and expenses, we are entitled to recover payment in

---

[6] Allegations concerning the knowledge of the defendant may be pled by presenting facts that "constitute strong circumstantial evidence."  *In re Parmalat Sec. Litig.*, 377 F. Supp. 2d 390, 401 (S.D.N.Y. 2005).

full from you, even if the third party does not pay you on time or at all."  Compl. Ex. 4, Business Terms, p.3, ¶6.3.  This provision – which is diametrically opposed to the third-party payment promise that induced Guinea to retain SNR Denton – now forms the basis of SNR Denton's claim against Guinea for unpaid legal services.[7]

Given these express allegations in the Counterclaim (including the specific references contained in the Retainer Agreement attached to Dentons US's Complaint), they easily satisfy the "who,[8] what, when, where, and how concerning the circumstances of the alleged fraud."  *Busby v. Capital One, N.A.*, 932 F. Supp. 2d 114 (D.D.C. 2013).[9]

According to Dentons US, Guinea's third alleged pleading deficiency related to fraud in the inducement is a failure to plead reasonable reliance.  Notably, in its Partial Motion to Dismiss, Dentons US does not dispute that Guinea adequately pled reliance on the false statements made by Dentons US (nor could Dentons US do so given the express allegations contained in the Counterclaim[10]).  Instead, Dentons US argues that any reliance on those representations had to be "reasonable" and that relying on an alleged promise by Dentons US to provide legal services to Guinea while seeking payment from a third party was, by definition, "objectively unreasonable."  Dentons US misunderstands the law and the facts.

---

[7]  "If a clause really is buried in illegible "fine print"—or if as in *Shute* it plainly is neither intended nor likely to be read by the other party—this circumstance may support an inference of fraud, and fraud is a defense to a contract." *Nw. Nat. Ins. Co. v. Donovan*, 916 F.2d 372, 377 (7th Cir. 1990)

[8] Dentons US's assertion that Guinea failed to identify *who* made the false statements is meritless.  Guinea clearly plead that the SNR Denton, the collective entity including Dentons US, made the false statements.  Moreover, the fraudulent representations identified in the Counterclaim originate with the Retainer Agreement and the Terms of Business [Compl. Ex. 4], official communications of the collective SNR Denton, the "Firm," signed by Jonathan D. Cahn.

[9]     Should this Court determine that the Counterclaim requires a more explicit allegation that Dentons US had knowledge that its representations were false when made or that there needs to be an allegation regarding an intent to deceive, Guinea requests an opportunity to amend its Counterclaim.

[10]  *See, e.g.*, Countercl. ¶ 61 ("Guinea relied on the false representations of SNR Denton and retained the law firm and did not contest the invoices that were issued.")

First, as noted above, a party alleging fraud is only required to plead that its reliance on the false representations was reasonable in cases where the parties were engaged in an arm's length transaction. *Drake, supra,* 993 A.2d at 622. Since the Retainer Agreement was formed between Guinea and SNR Denton at a point where SNR Denton had already established a fiduciary relationship in an "urgent" situation, it was not an arm's length transaction. Thus, the heightened pleading requirement of *reasonable* reliance is not applicable to Guinea's counterclaim.

Second, even if Guinea is required to prove that its reliance on SNR Denton's false statements was reasonable, that determination is a "question of fact that is judged based on the relationship between the parties." *Cordoba Initiative Corp.,* 900 F. Supp. 2d 42, 49-50 (D.D.C. 2012). Given the long and unique history between the parties, which pre-dated the December 2012 Retainer Agreement, the reasonableness of Guinea's reliance on SNR Dentons' representations is properly committed to the fact finder.

Finally, considering the allegations contained in the counterclaim in the light most favorable to Guinea (as this Court must do), the reasonableness of Guinea's reliance is apparent. Guinea engaged the services of SNR Denton *because* it held itself out as an international law firm, with offices around the world, with experience in international development of natural resources. (Countercl. ¶¶ 17, 50, 51) Indeed, it was because SNR Denton was working with the World Bank in the development of the Simandou project that Guinea was led to believe that it could trust and rely on SNR Denton's representations.

Dentons US's claim that it was "objectively unreasonable" for Guinea to rely on a promise that Dentons US would seek and rely on third-party funding for Guinea's legal fees is disingenuous. The language of the Retainer Agreement [p.4] memorializes the parties'

agreement that SNR Denton would, in fact seek such funding and that it would forego any collections from Guinea while it sought those funds.  This is not unlike a traditional contingency fee case where an attorney agrees to forego collecting legal fees directly from the client and instead defers collections until the fees are received from a third party.  Indeed, given SNR Denton's clear understanding that Guinea lacked the resources to pay extensive legal fees during the development of the potentially valuable natural resources in the Simandou region, it was objectively *reasonable* for Guinea to rely on a promise of third-party funding when it entered into the Retainer Agreement with SNR Denton.

In sum, allegations of reasonable reliance are not required here because of the fiduciary relationship between SNR Denton and Guinea.  Even if Guinea was required to plead reasonableness – which is ultimately a question of fact – Guinea did so adequately in its Counterclaim.

### C.    COUNT IV, SEEKING INJUNCTIVE RELIEF, IS PROPERLY PLED.

Dentons US asks the Court to dismiss Count IV which seeks injunctive relief compelling SNR Denton to adhere to the terms of the Retainer Agreement by submitting to an extra-judicial complaint and dispute resolution process.  Its motion is based on two flawed assertions: (1) Count IV amounts to nothing more than a remedy, and not a cause of action; and (2) this Court previously rejected Guinea's claim when it denied Guinea's motion to dismiss the complaint.  Neither argument compels the Court to dismiss Count IV.

### 1.    COUNT IV ALLEGES A BREACH OF CONTRACT WHICH THE COURT MAY REMEDY THROUGH INJUNCTIVE RELIEF.

Put simply, Count IV alleges a breach of contract.  It incorporates all of the allegations contained in Count I describing the billing dispute between Guinea and SNR Denton and SNR

Denton's breach of contract.[11]   Countercl. ¶ 65.   It then adds concrete allegations that SNR Denton bound itself to a dispute resolution process in the Retainer Agreement which Dentons US ignored when it filed suit against Guinea trying to recover the disputed fees.  For example, Count IV plainly states:

- The governing Retainer Agreement sets forth an agreed upon process to resolve billing disputes. Countercl. ¶ 66.

- The Retainer Agreement contemplates a complaint and dispute resolution process outside of the court system, which included any disputes over billing.  Countercl. ¶ 68.

- When the instant billing dispute arose, the Firm's attorneys designated in the Retainer Agreement failed to resolve it and the Firm failed to follow its own "formal complaints procedure."  Countercl. ¶ 71.

- SNR Denton did not defer collection, as promised, but chose to have its United States affiliate file suit in the United States, contrary to the terms of the Retainer Agreement. Countercl. ¶ 74.

After setting forth a plain statement of how SNR Denton breached the Retainer Agreement, Guinea asks the Court for injunctive relief:  "Guinea respectfully requests that this Court enter an injunction barring any further proceedings on the Complaint until SNR Denton exhausts the dispute resolution process that is mandated in its own Retainer Agreement and its SNR Location Terms of Business…."  Countercl. p. 38.

Given the well-pled breach of contract, it is not the case – as alleged by Dentons US – that Count IV states only a remedy and not a cause of action.  In fact, it does both:  Count IV makes out a breach of contract and requests injunctive relief as a remedy.  This case is thus distinguishable from *Guttenberg v. Emery*, 41 F. Supp. 3d 61, 70 (D.D.C. 2014) where the count dismissed by the Court stated *only* a request for relief and not a separate cause of action.  Even though the Court dismissed the count in *Guttenberg*, however, it recognized that the injunctive

---

[11]  Dentons US has not moved to dismiss Count I which alleges breach of contract.

relief requested was subsumed in the general clause seeking damages and "such other relief as the court deems just and proper." *Id.* at 70 n.5.

At most, Dentons US complains here that Count IV is mislabeled "Injunctive Relief" rather than "Breach of Contract (Injunctive Relief)." The heading labels are not material to the Counterclaim and are not even required under Fed. R. Civ. P. Rule 10(b) and thus, cannot form a basis to dismiss the count. A pleading that is comprehensible and presents no interpretive difficulties to the parties or the district court because of its form is not rendered insufficient due to captioning problems, heading problems or paragraph numbering problems. See 5A Fed. Prac. & Proc. Civ. § 1321-23 (3d ed.).

### 2.   GUINEA'S REQUEST FOR INJUNCTIVE RELIEF IS NOT BARRED BY THE "LAW OF THE CASE."

In response to Dentons US's Complaint, Guinea filed a Motion to Dismiss asking the Court to find that it did not have subject matter jurisdiction under the Foreign Sovereign Immunities Act ("FISA"). Dkt No, 15 at 4. As part of Guinea's argument that it did not waive sovereign immunity under FISA or consent to jurisdiction in American courts, Guinea noted that it had agreed in the Retainer Agreement to a complaint and billing dispute process outside of the court system. *Id.* at 6.

This Court (J. Lamberth) denied Guinea's motion, finding that Guinea engaged in "commercial activity" by entering into a legal services agreement with "SNR Denton US and its affiliates," and therefore could not claim sovereign immunity. Dkt. No. 21 at 7. The Court's decision did not decide the issue of whether Dentons US had agreed to a complaint and dispute resolution process, or whether Dentons US should be compelled to take part in such a procedure. Indeed, Guinea's motion to dismiss was focused, almost exclusively, on whether Guinea could

claim sovereign immunity; it did not seek the injunctive relief it now asks for in the Counterclaim.

Under these circumstances, Dentons US is not entitled to rely on the Court's order as "law of the case" barring Guinea's request for injunctive relief.  As Dentons US itself notes, the law of the case doctrine is a "prudential rule" that "expresses the practice of courts generally to refuse to reopen what has been decided."  *Crocker v. Piedmont Aviation, Inc.*, 49 F.3d 735, 739-40 (D.C. Cir. 1995).  The applicability of SNR Denton's complaint and billing resolution process has not been considered, much less decided, by this Court and therefore could not be deemed law of the case.

Since Judge Lamberth made no mention of the arbitration requirement in the Retainer Agreement, it cannot be said that Judge Lamberth's decision to allow the case to proceed somehow constitutes a summary decision on the breach of the alternative dispute requirements that has been "reopened" by Guinea's Count IV:

> A judge's failure or inability to consider important matters of law or fact is certainly a relevant factor in whether the original ruling should be regarded as the law of the case. *See, e.g., Adley Express Co. v. Highway Truck Drivers & Helpers Local No. 107,* 349 F.Supp. 436 (E.D.Pa.1972); *Goldstein v. Doft,* 236 F.Supp. 730 (S.D.N.Y.1964).  United States v. Eilberg, 553 F. Supp. 1, 5 (D.D.C. 1981).

Therefore, this is not a situation where "the same issue presented a second time in the same case in the same court should lead to the same result." *LaShawn A. v. Barry* 87 F. 3d 1389, 1393 (D.C. Cir. 1996), as cited by Dentons US. The law of the case doctrine simply does not apply here.

### D.    DENTONS US, LLP'S MOTION TO STRIKE IS FRIVOLOUS.

Dentons US asks the Court to strike from Guinea's Counterclaim all references to Guinea's Ebola crisis.  The core of Dentons US's argument is that the Ebola epidemic struck Guinea "long after Dentons US withdrew as [Guinea's] legal counsel."  Dentons US Mem. at 16.

Dentons US further argues that any reference to the "outbreak of a terrifying disease, the spread of which resulted in thousands of deaths" would be "unfair and prejudicial." In fact, it is neither.

As an initial matter, while Rule 12(f) of the Federal Rules of Civil Procedure permits a court to "order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter," courts are very reluctant to strike allegations from a properly pled complaint. *Stabilisierungsfonds Fur Wein v. Kaiser Stuhl Wine Distributors Pty. Ltd.,* 647 F.2d 200, 201 (D.C.Cir.1981) ("motions to strike, as a general rule, are disfavored") (citing 5 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1380, at 647-49 (1969)).

Contrary to Dentons US's assertion, it is absolutely untrue that Guinea is somehow attempting to use an "unrelated national tragedy to gain an advantage in [] litigation…." Dentons US Mem. at 17. Rather, the existence of Guinea's Ebola crisis is directly relevant to the damages Guinea suffered because of SNR Denton's wrongful conduct in breaching the Retainer Agreement, breaching its fiduciary duty, and compelling Guinea to mitigate its losses by paying Dentons a $2 million advance and engaging Clyde & Co. to complete the work that should have been performed by SNR Denton. Had SNR Denton not breached its agreement, Guinea would have had available to it an additional $3.2 million to use for Ebola relief in the months that followed.[12] It is this fact, and not some inappropriate 'link' between Ebola and SNR Denton, that is alleged in the Counterclaim. See, e.g. Countercl. ¶ 46 (Guinea "needed every available resource to address the Ebola epidemic that ravaged the country").

Since the existence of the Ebola crisis is relevant to damages, Guinea should not be made to sanitize the allegations contained in its Counterclaim to suit Dentons US.

---

[12] Thus, it is of no moment that, according to the U.S. Centers for Disease Control, Guinea's Ebola epidemic began two or three months after SNR Denton withdrew from representation. By then, the effects of the harm caused by SNR Denton's breach would be felt most keenly, i.e., when the country was most in need of resources.

### III.   CONCLUSION

WHEREFORE, Counterclaim Plaintiffs, the Republic of Guinea and its Ministry of Mines and Geology, respectfully request that the Opposition to Dentons US LLP's Partial Motion to Dismiss and Motion to Strike both be denied.  If, for any reason, this Court determines any pleading to be deficient, the Counterclaim Plaintiffs request leave to amend the pleadings.

January 22, 2016                                  Respectfully submitted,


                                                  ___/s/ David H. Dickieson_____
                                                  David H. Dickieson (DC Bar No. 321778)
                                                  Robert Spagnoletti (DC Bar No. 446462)
                                                  SCHERTLER & ONORATO, LLP
                                                  575 – 7th Street, N.W.
                                                  Suite 300 South
                                                  Washington, DC 20004
                                                  Telephone:  (202) 824-1222
                                                  Facsimile: (202) 628-4177
                                                  Email: ddickieson@schertlerlaw.com
                                                         bspagnoletti@schertlerlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on January 22, 2016, a copy of the foregoing THE REPUBLIC OF GUINEA'S OPPOSITION TO DENTONS US LLP'S PARTIAL MOTION TO DISMISS AND MOTION TO STRIKE was filed electronically via ECF.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF System.


                                              /s/ David Dickieson