**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| DENTONS US LLP, *Plaintiff*, v. THE REPUBLIC OF GUINEA, et al., *Defendants.* | Civil Action No. 14-1312 (RDM) |
| THE REPUBLIC OF GUINEA, et al., *Counterclaims and Third-Party Plaintiffs*, v. DENTONS US LLP, et al., *Counterclaims and Third-Party Defendants.* | |

## MEMORANDUM OPINION AND ORDER

In August 2014, Dentons US LLP ("Dentons US") filed a complaint against the Republic

of Guinea and its Ministry of Mines and Geology (collectively, "Guinea"), alleging claims for

breach of contract, quantum meruit, unjust enrichment, and account stated. *See* Dkt. 1

("Compl."). Dentons US alleges, in particular, that Guinea has not paid more than $10 million in

legal fees for work performed by Dentons US and its British and French affiliates on behalf of

Guinea on a large natural resources development project. Compl. ¶¶ 3–6, 59. Guinea answered

that complaint and counterclaimed, asserting its own breach of contract claim, as well as claims

for breach of fiduciary duty, fraudulent inducement, and injunctive relief. Dkt. 25

("Countercl.").  Guinea also asserted those same claims against three third-party defendants: Salans FMC SNR Denton Group (a Swiss Verein) ("the Dentons Verein"), Dentons Europe LLP ("Dentons Europe"), and Dentons UKMEA LLP ("Dentons UKMEA") (collectively, "Third-Party Defendants").  Countercl. ¶¶ 2, 8–14.

Dentons US now moves, pursuant to Rule 12(b)(6), to dismiss Counts III (fraudulent inducement) and IV (injunctive relief) for failure to state a claim upon which relief may be granted, and, pursuant to Rule 12(f), to strike Guinea's allegations relating to the Ebola crisis as "[i]rrelevant and [p]rejudicial."  Dkt. 39 at 8, 14–23.  The Third-Party Defendants, in turn, move to dismiss all of the claims asserted against them on multiple grounds.  Dkt. 40.  The Dentons Verein argues that because Guinea's claims against it stem from the incorrect "notion that [the Dentons Verein] engages in the practice of law," those claims must fail.  *Id.* at 7.  Dentons Europe and Dentons UKMEA, in turn, argue that the contract governing their relationships with Guinea "unambiguously provide[s] for exclusive jurisdiction in foreign courts" in accordance with the contract's "forum-selection clauses."  *Id.*  All three Third-Party Defendants, moreover, contend that Counts I (breach of contract), III, and IV each fail to allege one or more essential elements and thus fail to state a claim.  *Id.*

For the reasons explained below, the Court will grant Dentons US's motion to dismiss Count III; grant, in part, its motion to dismiss Count IV; and deny its motion to strike.  The Court will also grant the Third-Party Defendants' motion to dismiss all Counts against Dentons Europe and Dentons UKMEA, and will grant their motion to dismiss Counts II and III, and, in part, Count IV as asserted against the Dentons Verein, but will deny their motion to dismiss Counts I and, in part, Count IV, as asserted against the Dentons Verein.

# I.      BACKGROUND

For purposes of the pending motions to dismiss, the following facts, which are taken from Guinea's counterclaims and third-party complaint and from documents incorporated by reference, are taken as true.  *See Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011); *see also Nichols v. Vilsack*, No. 13-01502, 2015 WL 9581799, at *1 (D.D.C. Dec. 30, 2015) (explaining that in "adjudicating a motion to dismiss for failure to state a claim, a court may consider, along with the facts alleged in the complaint, 'any documents either attached to or incorporated in the complaint and matters' subject to 'judicial notice'") (quoting *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997)).  Most notably, this includes the relevant retainer agreements, which are expressly referenced in Guinea's counterclaims and third-party complaint, and upon which all of the parties rely in their respective briefs.  To the extent the plain terms of those agreements contradict the factual allegations of Guinea's counterclaims and third-party complaint, moreover, the Court need not accept the conflicting allegations.  *See Kaempe v. Myers*, 367 F.3d 958, 963 (D.C. Cir. 2004).

In an effort to develop natural resources discovered in the Simandou region of Guinea, the Republic of Guinea and its Ministry of Mines and Geology initiated the "Simandou Project" with the sponsorship of several investors and the World Bank.  Countercl. ¶15.  Guinea "sought legal counsel" for the project and, at the request of its sponsors, targeted "counsel experienced in the development of sovereign resources" who could "advise the government" on the "infrastructure necessary to develop the nationally-owned mineral resources" found at the site. Countercl. ¶¶ 15–16.  Guinea retained "SNR Denton" as counsel to work on the Simandou Project, Countercl. ¶ 17, and, on August 25, 2012, Mohamed Lamine Fofana, Guinea's Minister of Mines and Geology, formalized the representation agreement, stating that "SNR Denton US

LLP['s]" "appointment as Ministry's Counsel . . . [was] considered to have begun on May 2, 2012" and would "continue . . . until September 30, 2012," Dkt. 1-4 at 33 (Compl. Ex. 4).

On December 24, 2012, the parties executed an agreement to cover the three months that had passed since September 30, 2012, and to extend the representation into the future.  Dkt. 1-4 at 1 (Compl. Ex. 4); Countercl. ¶ 40.  The new agreement (the "Retainer Agreement") was divided into two parts: the "Engagement [L]etter," which set out the specific terms of the retention, Dkt. 1-4 at 1–6 (Compl. Ex. 4), and the "Terms of Business," which "contain[ed] the general terms and conditions applicable" to the Firm's "international working groups," *id.* at 3, 8–32.

**A.      The Retainer Agreement**

1.      *The Parties*

Dentons US, the Third-Party Defendants, and Guinea dispute which Dentons entities were parties to the Retainer Agreement.  According to Dentons US and the Third-Party Defendants, only Dentons US was a party to the agreement.  *See* Dkt. 39 at 9; Dkt. 40 at 19–22. In contrast, Guinea alleges that Dentons US and each of the Third-Party Defendants—and perhaps other Dentons entities—were parties to the agreement.  *See* Countercl. ¶¶ 3–5.  The following facts, however, are not disputed.

First, the Engagement Letter was signed by Jonathan D. Cahn, a partner in Dentons US's Washington, D.C. office.  Dkt. 1-4 at 5, 33, 37 (Compl. Ex. 4); Dkt. 39 at 9.  He does not, however, identify his affiliation in the Engagement Letter, which was printed on "SNR DENTON" letterhead.  Dkt. 1-4 at 1, 5 (Compl. Ex. 4).  Second, the Engagement Letter asserts that Guinea is engaging "the firm SNR Denton US LLP and its affiliates," which it then refers to collectively as "the Firm."  *Id.* at 1.  Third, the Engagement Letter states that the Terms of

Business would apply to the engagement and explains that the Terms of Business apply "to all our international working groups." *Id.* at 3. Fourth, the Terms of Business, which is on "SNR Denton" letterhead similar to that used for the Engagement Letter, in turn, asserts that "SNR Denton is the collective trade name for an international legal practice including SNR Denton Group (a Swiss Verein), SNR Denton UK LLP, SNR Denton US LLP and their affiliated undertakings, each of which is a separate and distinct legal entity." *Id.* at 8. Fifth, under a section captioned "Contracting Parties," the Terms of Business states that "[w]e may appoint other Practices"—that is, other "distinct legal entit[ies] . . . that are Member[s] of" the Dentons Verein—"to assist with your matter" as either a subcontractor or agent. *Id.* at 9. Finally, the Terms of Business includes additional location-specific contract provisions for Dentons US, *id.* at 29–30, Dentons UKMEA, *id.* at 27–29, and Dentons Europe, *id.* at 17–18, but not for the Dentons Verein, and, aside from the Engagement Letter's outline of the hourly rates of employees at various offices, the Third-Party Defendants are not otherwise mentioned in the Retainer Agreement, *see, e.g.*, *id.* at 1–6.

### 2.    *Compensation*

The Retainer Agreement also addresses the terms of the Firm's compensation in some detail. In particular, the Engagement Letter states that, although the "Firm[']s" "costs and fees" are typically "due upon receipt of [its] invoice," the Firm understood that Guinea did not "currently have the necessary funds to pay for the costs and fees of the representation." Dkt. 1-4 at 4, 10 (Compl. Ex. 4); Countercl. ¶ 18. "[W]ell aware of [Guinea's] urgent needs," the "Firm" agreed to "defer collection of fees and expenses . . . until the appropriate financing [was] in place," so long as Guinea "implement[ed] in good faith all efforts necessary to secure funding for [the Firm's] representation, either through [Guinea's] budget or through external funding." Dkt.

1-4 at 4 (Compl. Ex. 4); Countercl. ¶¶ 18–19.  The Engagement Letter further "authorizes the

Firm to seek, with third parties, various options for the financing of its representation, and to

present th[o]se options in the form of a written proposal to [Guinea] for its consideration."  Dkt.

1-4 at 4 (Compl. Ex. 4).  Although the Engagement Letter explains that any amounts collected

from those third-parties would be deducted from "the amounts due by [Guinea]," *id.* at 5, the

Terms of Business states that even "[w]here [Guinea] expect[s] a third party to reimburse" it for

the Firm fees, the Firm remains "entitled to recover payment in full from [Guinea]" whether or

not the external funding source pays "on time or at all," *id.* at 10.

       3.    *Dispute Resolution*

     The Retainer Agreement also includes terms that discuss how disputes between the

parties were to be handled.  Countercl. ¶¶ 66–73.  In the Engagement Letter, the Firm states that,

should Guinea "have any concern about any aspect of [the Firm's] services, including [its]

invoices," it should contact one of three designated employees—two in the Washington, D.C.

office of Dentons US and one in the London office of Dentons UKMEA—who were "committed

to resolving any issue" raised.  Dkt. 1-4 at 5 (Compl. Ex. 4).  To this, the Engagement Letter

adds that the Firm has "a formal complaints procedure . . . available upon request."  *Id.*  The

Terms of Business echoes this statement, noting that should Guinea become "dissatisfied with

any aspect of [the Firm's] services, including the invoice," it should "contact the Partner with

overall responsibility" for Guinea's project and that the Firm has a "complaints policy."  *Id.* at

13.

     Should a conflict between the parties escalate, the Terms of Business specifies particular

"dispute resolution mechanisms" for "each Practice" in its location-specific sections.  *Id.* at 13.

For disputes relating to Dentons Europe, for example, the Terms of Business states that "French

law governs all the agreements and arrangements" made between the parties and that, if "any claim, dispute, or difference of any kind whatsoever arises," the parties "agree to submit to the exclusive jurisdiction of the French courts." *Id.* at 18.  The Terms of Business goes on to explain that "[a]ny disputes relating to the amount and payment of [Dentons Europe's] fees shall be submitted to arbitration by the Bâtonnier of the Paris Bar Association." *Id.*  Similarly, the Terms of Business states that disputes relating to Dentons UKMEA are "govern[ed]" by "English law" and that the parties agree to "submit to the exclusive jurisdiction of the English courts," save for instances in which Dentons UKMEA, "at [its] sole option," chooses to "refer the . . . dispute . . . to arbitration in London." *Id.* at 29.  In contrast, the Terms of Business does not include forum selection (or arbitration) clauses for claims involving Dentons US's Washington, D.C. office or the Dentons Verein. *See id.* at 14–32.

## B.   Representation

The parties executed the Retainer Agreement in December of 2012.  Countercl. ¶ 40. Pursuant to the agreement, Guinea "retain[ed] . . . attorneys" in the "Washington[, D.C.], London, and Paris offices" of various Dentons entities.  Countercl. ¶ 17.  Although disputed, Guinea alleges that it "advanced every good faith effort available to it" to "secure funding for [the Firm's work on] the Simandou Project," but those efforts proved unsuccessful.  Countercl. ¶ 28.  Guinea further alleges that, although it "authorized" the Firm to "communicate directly" with project sponsors like "Rio Tinto" and with the "World Bank," the Firm "failed to secure payment."  Countercl. ¶¶ 20–21, 32–33.  The parties agree, moreover, that Guinea made a $2 million payment to Dentons US.  According to Dentons US, Guinea made the payment in partial fulfillment of its obligations under the Retainer Agreement.  Compl. ¶¶ 42–43.  According to Guinea, in contrast, the payment was provided as "a good faith" "advance" in order to provide

the Firm "time to arrange third party funding," Countercl. ¶23, but Guinea anticipated that

Dentons US would reimburse this amount to it after the Firm obtained third-party funding,

Countercl. ¶ 24.  Ultimately, the Firm "withdrew as counsel" and Guinea "was forced to retain

new counsel" at substantial expense to "complete[ ] the work" on the Simandou Project.

Countercl. ¶¶ 33–37.

## C.    Procedural History

Dentons US filed suit in this Court in 2014, "seek[ing] to recover the value" of unpaid

"legal fees and costs" stemming from the Firm's representation of Guinea and its work on the

Simandou Project from May 2012 to June 2013.  *See generally* Compl. ¶¶ 2–7, 19–59.  Guinea

moved to dismiss Dentons US's complaint on sovereign immunity and *forum non conveniens*

grounds and because the Retainer Agreement purportedly "waived any possible right" for

Dentons US to bring its "claim for fees in a U.S. Court."  *See* Dkt. 15 at 1–2.  The Court denied

Guinea's motion on all grounds.  *See* Dkt. 21.  Guinea then answered Dentons US's complaint,

counterclaimed with four of its own causes of action, and filed a third-party complaint against

the Dentons Verein, Dentons Europe, and Dentons UKMEA, alleging the same four causes of

action.  *See* Dkt. 25.

## II.    LEGAL STANDARD

A motion to dismiss brought under Federal Rule of Civil Procedure 12(b)(6) is designed

to "test[] the legal sufficiency of a complaint."  *Browning v. Clinton*, 292 F.3d 235, 242 (D.C.

Cir. 2002).  In evaluating such a motion, the Court "must first 'tak[e] note of the elements a

plaintiff must plead to state [the] claim' to relief, and then determine whether the plaintiff has

pleaded those elements with adequate factual support to 'state a claim to relief that is plausible

on its face.'"  *Blue v. District of Columbia*, 811 F.3d 14, 20 (D.C. Cir. 2015) (quoting *Ashcroft v.*

*Iqbal*, 556 U.S. 662, 675, 678 (2009)) (alterations in original) (internal citation omitted). Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), "a complaint must contain sufficient factual matter, [if] accepted as true, to 'state a claim to relief that is plausible on its face,'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).  A plaintiff may survive a Rule 12(b)(6) motion even if "recovery is very remote and unlikely," but the facts alleged in the complaint "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555–56 (quotation marks omitted).

In those cases in which the Court concludes that the complaint—or a particular count in the complaint—fails to state a claim, it must then determine whether the complaint—or count— should be dismissed with or without prejudice.  Given the preference voiced in the Federal Rules of Civil Procedure for resolving disputes on their merits, "[d]ismissal with prejudice is the exception, not the rule, in federal practice." *Rudder v. Williams*, 666 F.3d 790, 794 (D.C. Cir. 2012).  "Accordingly, the 'standard for dismissing a complaint with prejudice is high: dismissal *with prejudice* is warranted only when . . . the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency.'" *Id.* (quoting *Belizan v. Hershon*, 434 F.3d 579, 583 (D.C. Cir. 2006)) (alterations in original).

Finally, under Federal Rule of Civil Procedure 12(f), the Court "may order stricken from any pleading . . . any redundant, immaterial, impertinent, or scandalous matter."  The "decision to grant or deny a motion to strike is vested in the trial judge's sound discretion," *Aftergood v. CIA*, 355 F. Supp. 2d 557, 564 (D.D.C. 2005), but motions to strike "are not favored . . . and should usually be denied 'unless it is clear that the allegations in question can have no possible bearing on the subject matter of the litigation,'" *Cobell v. Norton*, 224 F.R.D. 1, 2 (D.D.C. 2004)

(quoting *Ulla-Maija, Inc. v. Kivimaki*, 2003 WL 169777, at *4 (S.D.N.Y. Jan. 23, 2003)); *see also Aftergood*, 355 F. Supp. 2d at 565 (noting that "absent a 'strong reason for so doing,' courts will generally 'not tamper with pleadings'" (quoting *Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 893 (2d Cir. 1976)).  Although federal courts retain the discretion to strike immaterial allegations even in the absence of prejudice to the moving party, in practice, "many courts will grant such a motion only if the portions sought to be stricken as immaterial are also prejudicial or scandalous." *Uzlyan v. Solis*, 706 F. Supp. 2d 44, 52 (D.D.C. 2010) (quotation marks omitted).  But, if the challenged allegations are both "irrelevant and prejudicial to the defendant, a motion to strike will be granted." *Wiggins v. Philip Morris, Inc.* 853 F. Supp. 457, 457 (D.D. C. 1994).

### III.   ANALYSIS

#### A.   Fraud in the Inducement

To state a claim for fraudulent inducement, the complaint must allege that the defendant (1) made a false representation, (2) regarding a material fact, (3) with knowledge of the falsity of that representation, (4) and an intent to deceive, and that (5) the plaintiff acted in reliance on that false representation.  *See McWilliams Ballard, Inc. v. Level 2 Dev.*, 697 F. Supp.2d 101, 108 (D.D.C. 2010) (citing *In re McKenney*, 953 A.2d 336, 342 (D.C. 2008)).  Moreover, "[a]t least in cases involving commercial contracts negotiated at arm's length, there is the further requirement (6) that the defrauded party's reliance be *reasonable*." *Hercules & Co. v. Shama Rest. Corp.*, 613 A.2d 916, 923 (D.C. 1992); *see also Regan v. Spicer HB, LLC*, 134 F. Supp. 3d 21, 36 (D.D.C. 2015).  As with other claims premised on allegations of fraud, a claim for fraudulent inducement "must be pled with particularity under Rule 9(b) of the Federal Rules of Civil Procedure." *Buy Back District of Columbia, LLC v. Home Depot USA, Inc.*, 2004 WL 4012265, at *1 (D.D.C. Dec. 14, 2004).  That means, as the D.C. Circuit has explained, that the complaint

must "'state the time, place and content of the false misrepresentations, the fact misrepresented and what was retained or given up as a consequence of the fraud'" and must "identify individuals allegedly involved in the fraud." *United States ex rel. Williams v. Martin-Baker Aircraft Co., Ltd.*, 389 F.3d 1251, 1256 (quoting *Kowal v, MCI Commc'ns Corp.*, 16 F.3d 1271, 1278 (D.C. Cir. 1994)). This more onerous pleading standard "serves to . . . safeguard[] potential defendants from frivolous accusations of moral turpitude" and "guarantee[s] all defendants sufficient information to allow for preparation of a response." *Intelsat USA Sales Corp. v. Juch-Tech, Inc.*, 935 F. Supp. 2d 101, 107 (D.D.C. 2013) (internal quotation marks omitted).

Dentons US argues that Guinea's claim for fraud in the inducement falls short of these standards at three points, and the Third-Party Defendants join in these arguments. Dkt. 39 at 14–20; Dkt. 40 at 22. In particular, it contends that Guinea has not adequately alleged (1) that Guinea reasonably relied on the purported false representations; (2) that Dentons US (and, by extension, that the Third-Party Defendants) had knowledge of the purported falsity of these representations; or (3) that any allegedly false representation was made with an intent to deceive. *Id*. The Court will address each argument in turn.

As Dentons US acknowledges, its first argument turns on whether the Retainer Agreement was a "commercial contract" that was "negotiated at arm's length." Dkt. 39 at 15–18. If it was not, Guinea need not allege that its reliance on the asserted false representations was "reasonable." *Hercules & Co.*, 613 A.2d at 923. According to Guinea, the negotiations were not at arm's length because it was in "urgent" need of representation, and, at the time the Retainer Agreement was negotiated, Dentons US and its affiliates had an existing attorney-client relationship with Guinea, giving rise to a fiduciary relationship. Dkt. 47 at 6, 9–10.

11

The Court agrees with Guinea that it cannot conclude on the pleadings, and drawing all inferences in favor of the nonmoving party, *see Am. Nat'l Ins.*, 642 F.3d at 1139, that the Retainer Agreement was negotiated at arm's length.  Dentons US is correct that this Court (Lamberth, J.) previously concluded that the parties engaged in "commercial activity" at the time they entered the Retainer Agreement.  Dkt. 21 at 4-7.  That conclusion, however, related solely to the availability of the "commercial activity" exception to the Foreign Sovereign Immunities Act and has little bearing on the present question.  But, even if the Court were to conclude that the agreement was a "commercial contract" for purposes of tort law, a substantial question of fact would remain regarding whether the agreement was negotiated at arm's length or whether the parties had the type of "confidential relationship" that obviates the need to allege or prove reasonable reliance.  *See Goldman v. Bequai*, 19 F.3d 666, 674 (D.C. Cir. 1994) ("Whether two parties are in a confidential relation is a fact-specific inquiry, but in general a confidential relationship arises when one party, having gained the trust and confidence of another, exercises extraordinary influence over the other party." (quotation marks omitted)).  That factual question cannot be resolved on a motion to dismiss.

Dentons US and the Third-Party Defendants fare better on their second argument—that Guinea has inadequately alleged that Dentons US or any of the Third-Party Defendants had knowledge of the purported falsity of the relevant representations.  Paragraph 59 of Guinea's counterclaims and third-party complaint lists five purported misrepresentations.  Countercl. ¶ 59(a)–(e).  Most of these purported misrepresentations are at odds with the plain terms of the Retainer Agreement and, thus, as a matter of law cannot support a claim of fraud.  Guinea alleges, for example, that Dentons US and its affiliates represented that "Guinea would not have to pay for services rendered by SNR Denton and its affiliates."  Countercl. ¶ 59(a).  But that is

not what the Retainer Agreement says.  Rather, under the plain terms of the agreement, "costs and fees are due upon receipt of [the Firm's] invoice," although Guinea was allowed to "defer payment" while it made "good faith" efforts "to secure funding for [the] representation."  Dkt. 1-4 at 4 (Compl. Ex. 4).  Similarly, Guinea alleges that "SNR Denton falsely represented in the Retainer Agreement that its clients would be entitled to a dispute resolution process with respect to any fee disputes."  Countercl. ¶ 59(e).  But the Retainer Agreement merely provides that the Firm maintains a "complaints policy" and specifies particular "dispute resolution mechanisms" for particular practices, none of which are applicable here.  *See* Dkt. 1-4 at 13–31 (Compl. Ex. 4).  To the extent that Guinea relies on purported falsities contained in the Retainer Agreement, and those falsities are contradicted by the plain terms of that very agreement, its claim for fraudulent inducement fails as a matter of law.  *See Kaempe*, 367 F.3d at 963 (explaining that a court need not "accept as true the complaint's factual allegations insofar as they contradict exhibits to the complaint").  And, to the extent that Guinea intends to rely on purportedly false statements made outside the four corners of the Retainer Agreement, it has failed to comply with the requirement of Rule 9(b) that the operative pleading identify the specific representation at issue.  *See* Fed. R. Civ. P. 9(b).

This, then, leaves Guinea's allegation that Dentons US and its affiliates represented in the Retainer Agreement that they would seek third-party funding, and that they "failed to make a good faith effort" to do so.  Countercl. ¶ 59(c).  Once again, however, that is not what the agreement actually says.  Rather, it merely "*authorizes* the Firm to seek, with third parties, various options for the financing of its representation and to present th[o]se options in the form of a written proposal to the Ministry for its consideration."  Dkt. 1-4 at 4 (Compl. Ex. 4) (emphasis added).  But, even beyond that, there is a vast difference between the failure to satisfy

13

a contractual requirement and entering into an agreement based on a knowing falsity.  As

Dentons US notes, the very next paragraph of Guinea's counterclaims and third-party complaint

alleges that the representations contained in the Retainer Agreement "*proved* to be false."

Countercl. ¶ 60 (emphasis added).  That allegation is a far cry from an allegation that the Firm

knew, at the time that it entered the Retainer Agreement, that it had no intention of seeking third-

party funding.

For similar reasons, the Court also concludes that Guinea has failed to allege that

Dentons US and its affiliates acted with an "intent to deceive."  Although Rule 9(b) permits a

plaintiff to allege "intent" and "knowledge" generally, *see* Fed. R. Civ. P. 9(b), Guinea has failed

to meet even the traditional pleading requirements.  Indeed, Guinea alleges no *facts* beyond

reciting its view of what the Retainer Agreement required and asserting that Dentons US and its

affiliates failed to satisfy their obligations.  If merely adding the conclusory assertion that

Dentons US and its affiliates acted with an intent to deceive were sufficient, virtually every claim

for a breach of contract could also be pled as a fraud claim.  Plainly, more is required.

To sidestep these deficiencies, Guinea attempts to recast its fraudulent inducement claim

as a claim for constructive fraud.  Dkt. 47 at 6–7.  "Constructive fraud includes all the same

elements as actual fraud except the intent to deceive," and, in place of requiring a showing of

actual dishonesty, it "requires a plaintiff to demonstrate the existence of a confidential

relationship between the plaintiff and defendant, 'by which the defendant [wa]s able to exercise

extraordinary influence over plaintiff.'"  *Cordoba Initiative Corp. v. Deak*, 900 F. Supp. 2d 42,

50 (D.D.C. 2012) (quoting *McWilliams Ballard, Inc. v. Broadway Mgmt. Co.*, 636 F. Supp. 2d 1,

7 n.7 (D.D.C. 2009)); *see also Himmelstein v. Comcast of the Dist., LLC*, 908 F. Supp.2d 49, 59

(D.D.C. 2012).  Because Dentons US  allegedly had "a fiduciary . . . relation[ship] [with]

Guinea" since initiating an attorney-client relationship in May of 2012, Guinea contends that

Dentons US "had a higher responsibility to ensure that it did not mislead, misrepresent, or omit

critical facts when . . . entering into agreements" with its client.  Dkt. 47 at 7.  That, however, is

not the claim that Guinea brought, and Guinea cannot amend its counterclaims and third-party

complaint by simple re-casting its claim in its opposition brief.  *See, e.g.*, *Arbitraje Case de

Cambio, S.A. de C.V. v. United States Postal Serv.*, 297 F. Supp. 2d 165, 170 (D.D.C. 2003) ("It

is axiomatic that a complaint may not be amended by the briefs in opposition to a motion to

dismiss" (quoting *Coleman v. Pension Benefit Guar. Corp.*, 94 F. Supp. 2d 18, 24 n.8 (D.D.C.

2013)).  As currently pled, Guinea's counterclaims and third-party complaint does not allege that

Dentons US or its affiliates was able to "exercise extraordinary influence over [Guinea],"

*Cordoba*, 900 F. Supp. 2d at 50 (quoting *McWilliams Ballard*, 636 F. Supp. 2d at 7 n.7), and,

although Guinea does allege a separate count for breach of fiduciary duty, that claim focuses on

conduct post-dating entry of the Retainer Agreement, such as "overbill[ing]," pursuit of a self-

serving litigation strategy, and failure to return client files, *see* Countercl. ¶ 52(a), (b) and (e).

In its current form, Guinea's counterclaims and third-party complaint thus fails to allege a

claim of fraudulent inducement or constructive fraud.  The Court will, accordingly, dismiss

Count III without prejudice as against both Dentons US and the Third-Party Defendants.

**B.     Injunctive Relief**

Dentons US also moves to dismiss Count IV of Guinea's counterclaims and third-party

complaint, a cause of action Guinea styles as "injunctive relief," Dkt. 39 at 20–23, and the Third-

Party Defendants join in that motion, Dkt. 40 at 22.  In addition, the Dentons Verein moves to

dismiss this count on the separate grounds that it is not engaged in the practice of law and thus

could not have violated any duty related to the provision of legal services.  *Id.* at 13–15.

15

As Dentons US correctly observes, *see* Dkt. 39 at 20–21, a "request for injunctive relief is a remedy and does not assert any separate cause of action," *Kemp v. Eiland*, 139 F. Supp. 3d 329, 343 (D.D.C. 2015) (internal quotation marks omitted).  Guinea does not dispute this noncontroversial proposition, but argues that, despite the label used in the counterclaims and third-party complaint, Count IV alleges a claim for breach of contract—and not a stand-alone claim for an injunction.  The Court agrees.  Although mislabeled, in substance Court IV alleges that Dentons US and its affiliates agreed to defer efforts to collect payment on the Firm's invoices and to submit any dispute to an internal Dentons dispute resolution process before filing suit and that they breached these promises.  Countercl. ¶¶ 66-75.  Construing Count IV as a claim for breach of contract, it appears to allege two separate breaches: first, that Dentons US and its affiliates breached their contractual undertaking to defer collection efforts "until the appropriate financing [wa]s in place," Countercl. ¶¶ 67, 74 (quoting Dkt. 1-4 at 4 (Compl. Ex. 4)); and second, that they breached their agreement "to follow [their] own 'formal complaints procedure,'" Countercl. ¶ 71 (quoting Dkt. 1-4 at 5 (Compl. Ex. 4)).  As explained below, the Court concludes that the first of these claims is sufficient to survive a motion to dismiss but that the second is not.

Although it is unclear how such a claim differs from Guinea's defense to Dentons US's claim for breach of contract, Guinea has alleged that Dentons US and its affiliates agreed not to seek "collection of [their] fees and expenses . . . until the appropriate financing [wa]s in place" and that they have breached that promise.  Dkt. 1-4 at 4 (Compl. Ex. 4).  The factual questions remain, of course, whether Guinea engaged in all "good faith . . . efforts necessary to secure funding for th[e] representation" and whether "appropriate financing" was in place.  *Id.*  Those factual questions, moreover, merge with the merits of Dentons US's claims.  But, construing the

complaint "liberally in the plaintiff['s] favor," and granting the plaintiff "the benefit of all inferences that can be derived from the facts alleged," *Kowal*, 16 F.3d at 1276; *see also Thomas v. Principi*, 394 F.3d 970, 972 (D.C. Cir. 2005), the Court concludes that Count IV states a claim—at least with respect to whether the necessary conditions were satisfied before Dentons US sought to collect on its outstanding invoices.

To the extent Count IV alleges that Dentons US and its affiliates breached an obligation to provide Guinea with an alternative dispute resolution mechanism, however, that claim fails. The provisions of the Retainer Agreement upon which Guinea relies do not establish an alternative dispute resolution mechanism or an exhaustion requirement. *See* Dkt. 39 at 21.  To the contrary, the Retainer Agreement merely states that Dentons US and its affiliates are "committed to resolving any issues" that might arise with Guinea; that the Firm has "a formal complaints procedure," which it promised to provide to Guinea "upon request"; and that individual Dentons Practices have "dispute resolution mechanisms," which are described in the Terms of Business.  Dkt. 1-4 at 5, 13 (Compl. Ex. 4); Countercl. ¶¶ 69, 72.  Read in context, however, the Firm's "commit[ment] to resolving any issues" applies only to "any concern about any aspect of [the Firm's] services" that the Firm's *client*—that is, Guinea—may have.  Dkt. 1-4 at 5 (Compl. Ex. 4).  Nothing in the Retainer Agreement even hints that this vague "commit[ment]" applies in cases in which it is the *Firm* that seeks redress.  The same is true, moreover, with respect to the "formal complaints procedure." *Id*.  As the Retainer Agreement makes clear, that policy—even if it were binding—applies in cases in which the *client* is "dissatisfied with the response" it receives from the *Firm*.  *Id.* at 13.

Guinea's reliance on the Practice-specific dispute resolution policies fares no better. Guinea asserts Count IV against Dentons US, the Dentons Verein, Dentons Europe, and Dentons

UKMEA.  Countercl. ¶¶ 2–3, 9–12, 65–67.  Although the Court will discuss these policies in greater detail below, for present purposes it is sufficient to note that only Dentons US has sued Guinea for failure to pay its invoices, and the counterclaims and third-party complaint do not identify any other collection effort that Guinea would have the Court enjoin in favor of some alternative dispute resolution mechanism.  *See* Compl. ¶ 73; Countercl. ¶ 74.  The Retainer Agreement, moreover, includes no special rules or dispute resolution mechanism for disputes between Guinea and Dentons US.

The Court will, accordingly, dismiss Count IV, except to the limited extent that it alleges that Dentons US and its affiliates breached the Retainer Agreement by seeking payment of the Firm's fees before "appropriate funding" was in place.

## C.      Motion to Strike

The Court turns next to Dentons US's motion to strike "all references to the Ebola epidemic" from Guinea's counterclaims and third-party complaint.  Dkt. 39 at 23–25.  The Ebola epidemic is mentioned three times in that pleading, most notably in connection with Guinea's breach of contract claim.  *See* Countercl. ¶¶ 46–47 (alleging that the financial damages caused by Dentons US's breach of contract "occurred at a time when the country needed every available resource to address the Ebola epidemic that ravaged the country" leaving "Guinea in a much weaker position to address the health crisis that paralyzed the nation and its economy" and that "killed more than 11,000 people in Guinea"); *see also* Countercl. ¶ 75 (alleging that in "the absence of injunctive relief," Guinea will suffer financial harms when it "must muster all of its resources to recover from the Ebola epidemic").

Dentons US argues that these references to Ebola are "[i]rrelevant and [p]rejudicial" and should be eliminated from the pleading pursuant to Federal Rule of Civil Procedure 12(f), which

permits the Court to "strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter." Dkt. 39 at 23. As Dentons US explains, because "the Ebola epidemic began long after Dentons US withdrew as [Guinea's] legal counsel," references to the epidemic "bear no rational connection to this dispute over legal fees." *Id.* Dentons US also posits that the references to Ebola are "highly prejudicial" because they attempt to "link the outbreak of a terrifying disease . . . to a law firm seeking payment of its legal fees." *Id.* at 24. Guinea responds that had Dentons US "not breached its agreement, Guinea would have had available to it [additional funds] to use for Ebola relief" and because "the existence of the Ebola crisis is relevant to damages, Guinea should not be made to sanitize the allegations contained in its Counterclaim to suit Dentons US." Dkt. 47 at 15.

The Court is far from convinced that the Ebola epidemic has any relevance to this case. Dentons US, however, faces a "high standard" in seeking to strike the arguably offending references. *Wiggins*, 853 F. Supp. at 457. In general, motions "under Rule 12(f) are viewed with disfavor . . . and are infrequently granted." 5C Wright & Miller et al., *Federal Practice and Procedure* § 1380 (3d ed. 2016); *see also Stabilisierungsfonds Fur Wein v. Kaiser Stuhl Wine Distribs. Pty. Ltd.*, 647 F.2d 200, 201 (D.C. Cir. 1981) (per curiam) (citing Wright & Miller for the proposition that "motions to strike, as a general rule, are disfavored"). Given the fact that the parties have yet to brief the range of issues posed by Guinea's contention that the Ebola epidemic has some bearing on damages—including, for example, questions of proximate cause, foreseeability, and speculativeness—the Court will not strike the references at this time. If Guinea elects to amend its counterclaims and third-party complaint, as this decision elsewhere permits, however, it should give due consideration to whether it has a good-faith basis for including such a contentious allegation.

**D.      The Third-Party Defendants' Motion to Dismiss**

Finally, the Third-Party Defendants move to dismiss Guinea's claims against them for failure to state a claim under Rule 12(b)(6).  *See* Dkt. 40.

1.      *The Dentons Verein*

The Dentons Verein argues that Guinea's third-party complaint—which "depend[s] on the allegation that [the Third-Party Defendants] practice law"—"do[es] not state a facially plausible cause of action against the Dentons Verein itself because . . . the Dentons Verein does *not* practice law."  Dkt. 40 at 13–14 (emphasis in original).  The Dentons Verein asserts, for example, that because it does not practice law it could not "enter[] into an agreement to provide legal services," Countercl. ¶ 39 (Count I); could not "assume[] the role of a fiduciary . . . in agreeing to serve as counsel," Countercl. ¶ 50 (Count II); would not make false representations to induce Guinea to contract for legal services that it could not provide, Countercl. ¶ 59 (Count III); and could not offer internal mediation over unpaid legal bills that it could not generate, Countercl. ¶ 66 (Count IV); *see also* Dkt. 40 at 14–15.  Guinea responds that the Dentons Verein was "one of the affiliates within Dentons US who entered into the Retainer Agreement to provide legal services" and that, as the Dentons Verein represented itself as a "global law firm" which was a collection of geographic "offices holding membership in a central entity," there is "no reason to excuse the ringleader umbrella organization from the law suit where the allegations of concerted activity are properly alleged."  Dkt. 48 at 4–9.

Although Swiss vereins do not have "an exact legal counterpart in the United States," they are "somewhat akin to an incorporated membership association" that is "legally distinct from its members."  *Jeffries v. Deloitte Touche Tohmatsu Int'l*, 893 F. Supp. 455, 457 n.1 (E.D. Pa. 1995); *see also In re Project Orange Assocs., LLC*, 431 B.R. 363, 368 n.2 (Bankr. S.D.N.Y.

2010).  "[O]ffices of the 'firm' are linked via an association but are separate legal entities with separate revenue pools." *In re GSC Grp., Inc.*, 502 B.R. 673, 735 n.227 (Bankr. S.D.N.Y. 2013). "Several courts have declined to treat" structures like vereins as "a single entity . . . jointly and severally liable" for the acts of its component firms "simply because they share[] an associational name and/or collaborate[] on certain aspects of the relevant transaction." *In re Lernout & Hauspie Sec. Lit.*, 230 F. Supp. 2d 152, 170 (D. Mass. 2002).  But, at least at the motion dismiss stage, it is sufficient for a plaintiff to make "specific factual allegations of agency" or to allege that the verein directly intervened in the conduct at issue.  *See In re Parmalat Sec. Lit.*, 377 F. Supp. 2d 390, 405 (S.D.N.Y. 2005).  Applying these concepts here, the Court concludes that some of Guinea's claims may proceed against the Dentons Verein, while others must be dismissed.

As to Count I, the Court is unpersuaded by the Dentons Verein's contention that Guinea's claim fails as a matter of law.  The Dentons Verein starts by pointing to the Terms of Business, which states that "the Dentons Verein (a Swiss Verein) does not itself provide legal or other client services."  Dkt. 40 at 14 (quoting Dkt. 1-4 at 8 (Compl. Ex. 4)).  It then argues that "an entity that does not provide legal services would not have plausibly 'entered into an agreement to provide legal services.'"  *Id.* (quoting Countercl. ¶ 39).  But that is not self-evident.  Guinea alleges that the Dentons Verein "is comprised of several affiliated firms [that] form a global legal practice . . . through its member firms and affiliates, . . . each of which is a separate business entity and each of which conducts its own legal practice."  Countercl. ¶ 2.  Although conceding that the Dentons Verein does not itself provide the underlying legal services, this allegation is consistent with Guinea's contention that the Dentons Verein, in essence, acted as the umbrella organization that facilitated the delivery of legal services by the "separate business entit[ies],"

who are the members of the verein.  The Dentons Verein, moreover, fails to identify any legal authority for the proposition that an entity that does not itself provide legal services cannot enter a contract pursuant to which its members provide those services.  Nor has it shown, at least at this stage of the proceeding, that the Retainer Agreement unambiguously bound only Dentons US.  To the contrary, the Engagement Letter was arguably entered into on behalf of Dentons US "*and its affiliates*," Dkt. 1-4 at 1 (Compl. Ex. 4) (emphasis added), and the Terms of Business, which is on the same "SNR DENTON" letterhead as the Engagement Letter, explains that "SNR Denton is the collective trade name for an international legal practice including" the Dentons Verein, Dentons US, and Dentons UKMEA, *id.* at 1, 8.  At least for purposes of a motion to dismiss, these allegations are sufficient.[1]

As to Count II, however, the Court is convinced that Guinea's claim against the Dentons Verein fails as a matter of law.  That count asserts a claim for breach of fiduciary duty based on the attorney-client relationship that existed between Guinea and its counsel.  *See* Countercl. ¶¶ 51–55.  The Terms of Business, however, clearly states that the Dentons Verein "does not itself provide legal or other client services," Dkt. 1-4 at 8 (Compl. Ex. 4), and Guinea does not allege that the Dentons Verein, in fact, acted as its lawyer.  Because the attorney-client relationship is a necessary element of this claim, and because there is no basis for inferring that the Dentons Verein acted as Guinea's counsel, the Court will dismiss Count II as against the Dentons Verein.

---

[1]  Under the "general rule," the "obligation created by the promise of several persons is joint unless the contrary is made evident."  *Welch v. Sherwin*, 300 F.2d 716, 718 (D.C. Cir. 1962) (quotation marks omitted); *see also Bender v. Jordan*, 570 F. Supp. 2d 37, 47 & n.9 (D.D.C. 2008) (same).  The parties have yet to address whether and how this rule might apply in the present context.

Because the Court has already concluded that Count III fails to state a claim and that most of Count IV fails as a matter of law, *see supra* 10–18, this then leaves only the portion of Count IV that alleges that Dentons US and the Third-Party Defendants breached the Retainer Agreement when Dentons US brought suit seeking to collect its fees.  For the same reasons that the Court concludes that Count I states a claim against the Dentons Verein, it concludes that this remaining portion of Count IV also survives as against the Dentons Verein.

### 2.    *Dentons Europe and Dentons UKMEA*

Finally, Dentons Europe and Dentons UKMEA argue that Guinea has "waived any right to bring suit" against them "in a United States court by agreeing to forum-selection clauses that unambiguously provide for exclusive jurisdiction in foreign courts."  Dkt. 40 at 7.  In support of this defense, they point to the "Location Terms of Business" contained in the Retainer Agreement and argue that Guinea agreed to "the exclusive jurisdiction of the French courts" for all disputes "aris[ing] out of or in connection with" Dentons Europe's representations of Guinea,[2] Dkt. 1-4 at 18 (Compl. Ex. 4), and "the exclusive jurisdiction of the English courts" for all disputes "aris[ing] out of or in connection with" Dentons UKMEA's representation of Guinea, *id.* at 29.  Alternatively, they argue that, because they were not "parties to the contract," Guinea's breach of contract claim (Count I) "must be dismissed."  Dkt. 40 at 19–22.

Guinea responds that Dentons Europe and Dentons UKMEA should not be permitted simultaneously to "fall back upon the protections in the Retainer Agreement's Terms of Business," while "maintain[ing] at the same time that they are not parties to the Retainer Agreement or Terms of Business."  Dkt. 48 at 10.  That contention, however, is unpersuasive.

---

[2]  That same provision also provides that "disputes relating to the amount and payment of [the Firm's] fees shall be submitted to arbitration."  Dkt. 1-4 at 18 (Compl. Ex. 4).

Guinea has alleged that Dentons Europe and Dentons UKMEA were parties to the Retainer Agreement, and the adequacy of the counterclaims and third-party complaint must be assessed in light of Guinea's allegations.  *See Iqbal*, 556 U.S. at 678 ("[A] court must accept as true all of the allegations contained in a complaint[.]").

More substantively, Guinea also argues that "there is nothing in the Retainer Agreement or [in] the Terms of Business that addresses the situation of jurisdiction against multiple" offices or that requires a claim to be "fractured among multiple jurisdictions."  Dkt. 48 at 11.  Although that is correct as far as it goes, the text of the Location Terms of Business is sweeping and, on its face, includes the present circumstances.  It provides:  "*[A]ny* claim, dispute or difference *of any kind whatsoever* aris[ing] out of or in connection with" any "agreements [or] arrangements between you and us relating to our services" is subject "to the exclusive jurisdiction of the French courts" or is subject to arbitration by "the Paris Bar Association" (Dentons Europe), Dkt. 1-4 at 18 (Compl. Ex. 4) (emphasis added), and "*any* claim, dispute or difference *of any kind whatsoever* . . . aris[ing] out of or in connection with" "all the agreements [or] arrangements between you and us relating to our services" is subject "to the exclusive jurisdiction of the English courts" (Dentons UKMEA), *id*. at 23 (emphasis added).

Given the clarity and breadth of this language, Guinea's argument appears to boil down to one of fairness:  If Dentons US is able to litigate against Guinea in U.S. court, Guinea should be able to litigate against Dentons Europe and Dentons UKMEA in U.S. court as well and should not be forced to wage three separate legal battles across two continents.  It is unclear from the current record whether Guinea would, in fact, lose anything by limiting its claims to Dentons US.  But, even assuming that it would, and recognizing the burden of being required to litigate a proceeding in three different fora, the Court must enforce the forum selection clauses agreed to

by the parties "unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972); *see also Commerce Consultants Int'l, Inc. v. Vetrerie Riunite, S.p.A.*, 867 F.2d 697, 700 (D.C. Cir. 1989) (explaining that there is "a strong presumption in favor of enforcement of freely negotiated contractual choice-of-forum provisions." (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 631 (1985))).  "Unreasonable" forum-selection clauses include those "induced by fraud or overreaching," those where the "contractually selected forum is so unfair and inconvenient as, for all practical purposes[,] to deprive the plaintiff of a remedy or of its day in court," and those where "enforcement would contravene a strong public policy of the [forum] where the action is filed." *Water & Sand Int'l Capital, Ltd. v. Capacitive Deionization Tech. Sys., Inc.*, 563 F. Supp. 2d 278, 283 (D.D.C. 2008) (quotation marks omitted) (second alteration in original).

Here, the Court cannot conclude that enforcement of the forum selection clauses would be "unreasonable."  Guinea acknowledges that each of the entities it seeks to sue constitutes "a separate business entity."  Countercl. ¶ 2.  And, although it may be inconvenient for Guinea to proceed in three separate fora, it entered a Retainer Agreement that granted Dentons Europe and Dentons UKMEA the right to litigate in their domestic fora.  Requiring that those entities litigate in the United States would, in turn, impose additional burdens on them—even if those burdens may be less substantial than the burdens Guinea could face if required to pursue a "fractured" litigation in "multiple jurisdictions."  Dkt. 48 at 11.  Under these circumstances, the Court must enforce the agreement of the parties.

The Court will, accordingly, grant the motion of Dentons Europe and Dentons UKMEA to dismiss.

**CONCLUSION**

For the reasons discussed above, Count III of Guinea's counterclaims and third-party complaint is dismissed without prejudice and Count IV is dismissed in part.  Dentons US's motion to strike is denied, also without prejudice.  The Dentons Verein's motion to dismiss is granted, except with respect to Count I and the above-identified portion of Count IV.  Dentons Europe's and Dentons UKMEA's motion to dismiss is granted.

**SO ORDERED**.

<u>/s/ Randolph D. Moss</u>
RANDOLPH D. MOSS
United States District Judge

Date:  September 25, 2016