IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **DENTONS US LLP,** ) | |
| ) | |
| *Plaintiff,* ) | |
| ) | |
| *v.* ) | Case No. 1:14-cv-1312-RDM |
| ) | |
| **THE REPUBLIC OF GUINEA et al.,** ) | |
| ) | |
| *Defendants.* ) | |
| ) | |
| —————————————————— ) | |
| ) | |
| **THE REPUBLIC OF GUINEA et al.,** ) | |
| ) | |
| *Counterclaim and Third Party Plaintiffs,* ) | |
| ) | |
| *v.* ) | |
| ) | |
| **DENTONS US LLP et al.,** ) | |
| ) | |
| *Counterclaim and Third Party* ) | |
| *Defendants.* ) | |
| ) | |
| —————————————————— ) | |

**DECLARATION OF DANIEL WOUTERS**

I, Daniel Wouters, declare as follows:

1.     I make this Declaration in support of Plaintiff's Opposition to Defendants'
Motion for Summary Judgment in the above-captioned action.  Unless otherwise stated, I have
personal knowledge of the facts stated in his Declaration.  If called upon to do so, I could and
would competently testify to these facts.

2.     I am currently Managing Director at Gateway 22, a consulting firm that I co-
founded which is focused on Commodity, Energy, Mining Finance and Agro-Industrial Project
Finance.  I obtained an MBA from INSEAD – Fontainebleau, and a Master in law degree from
Université Libre de Bruxelles in Belgium.  My expertise includes advising businesses and

governments on strategies for negotiating complex infrastructure projects, particularly the financial aspects.

3.      Prior to forming Gateway 22, I served as Executive Chairman of the Global Tin Corporation and Vice President of Business Development in the Mining Business Unit for Areva.  I began my career as General Counsel for the Office of the President of Côte d'Ivoire, where I helped review draft laws and decrees to ensure their constitutionality.  During my career I have routinely worked on matters involving investments and transactions in Africa, including: negotiating the sale of a local water utility in Namibia to mining companies in 2010; coordinating the financing (up to $480 million dollars) of a cement plant in Nigeria in 2005; and assisting the financing of a bauxite mining operation in the Boké region of the Republic of Guinea in 2003.

4.      In April 2013, before I formed Gateway 22, and while I was an independent consultant in France, Dentons US retained me to assist its representation of the Republic of Guinea regarding the Simandou Project.  Dentons US and its team of retained subject-matter experts provided legal, technical and financial advice to Guinea during its negotiations with Rio Tinto, which had been granted a concession to develop and mine a massive iron ore deposit in the country's southeast.  Mining the iron ore required construction of a deepwater port and long railway through dense forest to connect the Simandou mine with the ocean.  At the time, I was aware that Guinea had previously entered into several contracts with Rio Tinto without the benefit of counsel.

5.      In the spring of 2013, Guinea was entering a new phase of negotiations with Rio Tinto.  The parties were focused on negotiating and finalizing the Investment Framework

Agreements that were required to set the terms and conditions for constructing the transportation infrastructure and for governing the mining of the iron ore.

6.      Dentons US Senior Advisor Laurent Lavigne du Cadet asked me to assist the representation of Guinea on or about April 15, 2013. Mr. du Cadet and I had known each other professionally based on a prior project, and he was aware of my experiences in international project finance and Africa, including specifically the Republic of Guinea. My role was initially to ensure the bankability of the Investment Framework Agreements being negotiated, meaning that financing could be secured once Guinea and the Project Sponsors finalized the relevant contracts. Over time my role expanded to assist Dentons US's attorneys in briefing, coaching and preparing the relevant Guinean officials for the in-person negotiations with the Simandou Project sponsors, including Rio Tinto. My location in France also allowed quick travel to Conakry when necessary.

7.      I first met with Guinean officials as a Dentons US subcontractor on or about April 17, 2013 when I accompanied Dentons US attorneys Jonathan Cahn and Marc Sage to Conakry for preparation and briefing of Government officials. Ex. 1, DENUS00904797. Guinea and Rio Tinto had decided to form a "Working Group" that would consist of officials one level below Ministers to focus on negotiating the technical aspects of the Investment Framework Agreements. Guinea's delegation to the Working Group included: Presidential Advisor Abdoulaye Magassouba; Presidential Advisor Idrissa Thiam; officials from the Ministry of Mines; officials from the Ministry of Finance, including Mr. Sidi Mouctar Dicko, a tax specialist and Senior Advisor to Minister of Finance Kerfalla Yansane; officials from the Ministry of Budget, including Mr. Mamady Kaba; and officials from SOGUIPAMI, Guinea's state-owned mining company.

3

8.      Although Minister of Mines Mohamed Lamine Fofana was not part of the

Working Group, I regularly met and spoke with him during multiple meetings while in Conakry.

Minister of Finance Yansane was also not part of the Working Group, but Mr. Dicko was his

representative.

9.      During this set of meetings in Conakry in April 2013, Dentons US and its

subcontractors provided legal, technical and financial advice and services to these officials and

others in the Working Group, and these officials accepted these services without stating any

condition or objection.  Our goal, as it was at all of these meetings, was to ensure that the

Guinean delegation was as well prepared as possible to directly negotiate with Rio Tinto and the

other Project sponsors.  The preparation included briefing on specific technical aspects of the

Project as well as general advice on how best to negotiate during the meetings.

10.      I next met with Guinean officials in Paris on or about May 19, 2013 to provide in-

person support during the Working Group meetings.  I interacted with the usual delegation,

which included Messrs. Magassouba, Thiam, Dicko and Kaba.  As part of the preparation, I

assisted Dentons US with drafting, editing and presenting voluminous work product to the

Guinean delegation that included extensive "briefing books" with detailed memoranda on key

issues, an evolving "Key Issues" list and a Strategic Communications Plan.

11.      On or about June 5, 2013, I led a comprehensive review of Dentons US's invoices

in Conakry while Dentons US's Kenyon Weaver provided support from Washington, D.C.  This

invoice review was conducted at Guinea's request.  In Conakry I worked closely with Ms. Touré

Keita, the Financial Controller for the Ministry of Mines.  We spent approximately ten days

meticulously reviewing the invoices—answering Ms. Keita's questions and correcting the non-

substantive mathematical errors that we discovered.  Ex. 2, DENUS00662836.  Correcting the

4

errors required both additions and subtractions, and did not meaningfully change the total amount of the invoices. Once the invoices were correct, we also finalized corresponding "statements of account." These contained less detailed information and could be provided to third parties without disclosing confidential information or violating attorney-client privilege.

12.     Prior to beginning the invoice review I had briefly met with Minster of Mines Fofana, who informed me that once the review was complete he would sign the statements of account and request that Rio Tinto provide funding of Guinea's legal fees and expenses. Ex. 2. Dentons US and Guinea had spent several months discussing with Rio Tinto the possibility that it or the Simandou Project would provide funding for the services that Guinea was requesting and accepting from Dentons US. Minister Fofana did not assert that Guinea was not responsible for the fees and expenses.

13.     After our lengthy review, Ms. Keita approved the accuracy of the invoices and statements of account. On or about June 20, 2013, while still in Conakry, I met with Minister Fofana, Ms. Keita and Mr. Saadou Nimaga, legal counsel to the Ministry of Mines, to discuss the invoices. Minister Fofana accepted their accuracy, but wanted to discuss the possibility of a discount on the overall amount of the fees with Dentons US, and an alternative to the hourly billing approach as the representation continued. I agreed to raise these issues with Dentons US. Again, no one asserted that Guinea was not responsible for the fees and expenses.

14.     To my knowledge, at no point did Minister of Mines Fofana or any other Government official, including Mr. Dicko of the Ministry of Finance, question or repudiate the December 24, 2012 Letter of Engagement that the Minister of Mines had signed, or assert that an attorney-client relationship did not exist between Guinea and Dentons US, or disclaim any of Guinea's repeated requests for, and acceptance of, legal advice and services from Dentons.

5

15.     Over the next several weeks, various options and proposals were exchanged between Dentons US and Guinea that were aimed at agreeing on a total amount to be paid for past work as well as a proposed fee structure for the representation moving forward—a representation that Guinea repeatedly said it wanted to continue because it was consistently impressed with the quality of our legal advice and work product.  Minister of Mines Fofana also sought funding from Rio Tinto for Guinea's legal fee and expenses related to the Simandou Project in July 2013, which Rio Tinto refused to do.  After that refusal, the Dentons US–Guinea fee negotiations continued, as did Dentons US's provision of legal services to Guinea.

16.     During the invoice review process, I continued to help complete and deliver work product to Guinea as part of ongoing preparation for the Working Group meetings.  For example, on June 16, 2013, I provided information from Dentons US's affiliate office in China regarding the recent financial performance of Chinese mining company Chalco, which had a stake in the Simandou Project and was a participant in the Working Group meetings.  Ex. 3, DENUS00668175.  On June 17, 2013, I provided a "Table of Key Points" that had been developed during preparation in Conakry to guide the Guinean officials during the negotiation meetings.  Ex. 4, DENUS00668996.  The recipients on both emails included Mr. Magassouba Presidential Advisor, Mr. Dicko from the Ministry of Finance, and Mr. Kaba from the Ministry of Budget.  Throughout this period the Guinean Working Group delegation accepted legal advice and work product from Dentons US and its retained subcontractors.

17.     By August 2013, millions of dollars in unpaid fees and expenses, including my own, had accumulated.  I traveled to Conakry in August 2013 to assist discussions between Guinea and Dentons US regarding payment.  I first met with Minister of Mines Fofana on or about August 9, 2013.  We discussed the invoices and statements of accounts that had been

reviewed and finalized in June in consultation with Ms. Keita, Financial Controller for the

Ministry of Mines. Minister Fofana informed me that he would speak with Minister of Finance

Yansane to coordinate a meeting with Dentons US to discuss options for payment. As before, no

one asserted that Guinea was not responsible for the fees and expenses.

      18.     On or about August 10, 2013, I was joined by Mr. Cahn and met with Guinean

officials including Minister Yansane, Minister Fofana and Mr. Magassouba to discuss payment

of Dentons US's invoices. Ex. 5, DENUS00415096. We continued to talk on August 11, when

we were joined by Mr. Sage. Although Minister Yansane stated that Dentons US's December

24, 2012 Letter of Engagement had not gone through the normal internal approval process, he

did not disavow the contract nor state that it was void. Nor did Minister Yansane ever state that

Dentons US and its subcontractors should not be paid. He also did not raise any question about

the existence of an attorney-client relationship between Dentons US and Guinea, or deny that

Guinea had requested and received thousands of hours of legal services from Dentons and

continued to consider the services to be excellent.

      19.     To the contrary, our discussion focused on potential payment options for the

attorney-client relationship that Guinea had requested from and created with Dentons US. This

is evidenced by the fact that Minister Yansane stated that Guinea was willing to provide a partial

payment of $1 million dollars. No basis was expressed for this payment other than Guinea's

engagement of Dentons US in an attorney-client relationship and the provision of thousands of

hours of legal advice and services by Dentons to Guinea. Minister Yansane then suggested that

Dentons US and Guinea (specifically Idrissa Thiam) speak with the World Bank to request

funding for Guinea's legal fees and expenses. If the partial payment and World Bank funding

were insufficient to cover the Dentons US invoices, Minister Yansane committed to pay the

additional fees and expenses. Minister Yansane confirmed that this commitment included past expenses and future expenses that would be incurred as Dentons US's representation continued.

20.    Following those meetings I returned to France but continued to correspond with Guinean officials regarding the $1 million partial payment pending discussions with the World Bank. I spoke with Minister Fofana by phone on August 21, when he informed me that he had sent a formal letter to Minister Yansane requesting a $1 million payment to Dentons US. Ex. 6, DENUS00681955. I attempted to speak with Minister Yansane that same day, but was unable to and instead spoke with Mr. Idrissa Thiam, who confirmed that Minister Yansane was aware of Minister Fofana's letter but had not yet received it. I personally spoke with Minister Yansane on August 22, at which point he said that he had not yet received Minister Fofana's letter that formally requested a $1 million dollar payment to be made to Dentons US. Ex. 7, DENUS00682286.

21.    I emailed Mr. Magassouba, Minister Fofana and Mr. Thiam on August 30 to summarize the discussions and meetings regarding payment that had occurred that summer, including the detailed invoice review in June and the discussions in mid-August with Minister Yansane regarding a partial payment and seeking additional funding from the World Bank. Ex. 8, DENUS00421266.

22.    During the correspondence and meetings regarding payment, I continued to assist Dentons US's representation of Guinea, including the delivery of work product. For example, Dentons US had drafted a "Side Letter" on behalf of Guinea that was to be submitted to Rio Tinto as part of the ongoing negotiations over the relevant Investment Framework Agreements. After discussing a draft with Guinean officials on August 14, I emailed a revised copy on August 15 to Ministers Fofana and Yansane, Messrs. Thiam and Magassouba, and others. Ex. 9,

DENUS00415817.  I witnessed all of these officials, including Minister Yansane, accepted legal advice, services, and work product from me and Dentons US, and at no point did anyone decline these services, raise any question about the existence of an attorney-client relationship between Dentons US and Guinea, or deny that Guinea had requested and received thousands of hours of legal services from Dentons and continued to consider the services to be excellent.

23.     Despite our best efforts at pursuing solutions in good faith, Guinea never provided any additional payment for its engagement of Dentons US in an attorney-client relationship.

I declare under penalty of perjury that the foregoing is true and correct.

Daniel Wouters

Executed on December 8, 2017

9